THE STATE *to the use of* ROSENBLATT, *Collector*, v. HEMAN, *Appellant.*

1. **Interpretation of Statutes.** When the provisions of a law are inconsistent and contradictory to each other, or a literal construction of a single section would conflict with every other and with the entire scope and manifest intent of the act, it is the duty of the court, if it be possible, to harmonize the various provisions, and to effect this it may be necessary to depart from a literal construction of one or more sections.

2. **Revenue Law of 1865:** FORFEITED LANDS: STATE'S LIEN FOR TAXES. The 116th section of the revenue law of 1865, (Gen. Stat., p. 128,) did not vest in the State the absolute title to lands which, for want of bidders at a tax sale, were struck off to the State, but only gave a lien for the taxes.

3. **Back Tax Act of 1877, Constitutional.** The act of 1877 to provide for the collection of delinquent taxes, imposes no new obligation, and so is not obnoxious to the constitutional prohibition against retrospective laws. Acts 1877, p. 384.

4. ———: STATUTE OF LIMITATIONS. No action under the back tax act of 1877, for the collection of taxes more than five years delinquent, was barred by the statute of limitations, if it was brought within

five years from March 31st, 1875, the date of the passage of the back tax act of that year. Sess. Acts 1875, p. 82.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*R. F. Wingate* and *Charles Gibson* for appellant.

1.  It appears, from the petition, that judgment was regularly obtained against this property, and that it was regularly sold for the taxes of 1868, and that the taxes sued for are the same for which the property was sold or forfeited to the State under the law in force at that time. It follows that any pecuniary demand which the State had, especially after the end of two years allowed to redeem, had become satisfied and extinguished; the State has either the land or nothing at all. The lien attempted to be imposed is, as alleged, for taxes " due or unpaid." When the property has been transferred to the State by forfeiture, the taxes for which the forfeiture took place are neither " due nor unpaid." The State cannot claim the money and the land both, nor a lien upon the land for the taxes, when she has sold or forfeited it to herself in consideration of the taxes. The judgment of the county court extinguished the taxes, which then passed *in rem judicatam.* The offer to sell the land under such judgment, and its forfeiture, extinguished the lien, and the property was thereby transferred to the State. *Bennett v. Hunter,* 9 Wall. 336. The act of 1877 imposes a lien for taxes due and unpaid. Now, taxes which have been satisfied, paid or extinguished by the sale or forfeiture of the land taxed, were not due, nor were they unpaid, for the transfer by way of forfeiture of the property, paid and satisfied them—they were neither " due or unpaid" in the sense of the law. Blackwell on Tax Titles, (2 Ed.) p. 459.

2.  Our constitution not only inhibits all legislative interference with vested rights, but also prohibits the crea-

tion of a new obligation, the imposition of a new duty or the taking away of a valid defense in respect to transactions or considerations already passed. Constitution, art. 2, § 15; *Hope Mut. Ins. Co. v. Flynn*, 38 Mo. 483; *Barton Co. v. Walser*, 47 Mo. 189; *De Cordova v. Galveston*, 4 Texas 470. In this suit judgment is asked for the taxes which became due and payable in 1868, for which, under the law in force at the time, the State not only obtained judgment in a court of competent jurisdiction, but actually sold and forfeited the land to itself; whereby (Sess. Laws 1865-6, § 116, pp. 161, 162) all right, title and interest therein was transferred to and absolutely vested in the State, not to be again taxed or sold, as other lands, until again sold to some person by the State or redeemed. By this judgment, sale and forfeiture, the title to the land, under the law in force at the time, became vested in the State, and the tax debt was satisfied and extinguished. It was no longer an obligation resting upon the tax debtor; nor was he thereafter in duty bound to pay it, and had he been again sued for the taxes, the fact that he had been divested and the State invested with the title to the land on account of and in payment of the taxes, in reason, in common sense and law, vested in him a right of defense which the Legislature was powerless to deprive him of. While the taxes remained due—were merely levied and assessed—the right of the Legislature to create or change the mere remedy for their enforcement or collection within the time limited by law, cannot be questioned. But when taxes are once paid either in money, by the sale of property or otherwise, under the law, all efforts of the Legislature to revive the debt, to re-impose upon him the duty or an obligation to pay them; or which deprive him of an existing defense, fall within the constitutional prohibition against retrospective legislation.

3. This action is barred by the five year limitation act. A tax imposed by the Legislature is "a liability created by statute," within the meaning of that act. Wag.

Stat., § 10, p. 918; *St. Louis v. Newman*, 45 Mo. 138.   The
cause of action did not originate in the back tax act of
1877.   If that act created a cause of action that did not
before exist, and is not simply an act changing the remedy
for the enforcement of a pre-existing cause of action,
it is retrospective and void under the constitution.   But
the act will bear no such construction.   It professes to re-
linquish, in a measure, rights acquired by the State under
previous laws, for the collection of taxes and all forfeitures
incurred thereunder.   It gives the tax payer further oppor-
tunity to redeem forfeited lands on liberal terms, and pro-
vides a mode of again enforcing the original tax liability
in case the tax payer fails to avail himself of the new priv-
ilege of redemption.   But the cause of action still rests
upon the original assessments and original tax levy and
arose out of the act of 1865.   This cause of action was
barred by limitation before the passage of the act of 1877,
and hence the 15th section of that act exempting the State
from the operation of the statute of limitations, does not
apply.   A cause of action once barred cannot be revived
by legislative enactment.   4 Texas 470.   Again, the pro-
ceedings formerly provided to enforce the collection of
taxes were in the nature of a civil action, and hence come
within section 10 of the limitation act.

Again, a right of action is expressly given by the act
of 1872 upon the same taxes sued for in this case.   That
right of action was continued by the act of 1875.   These
two acts were not acts of limitation, nor intended to be
such, but they were acts conferring the right to sue.   If
we assume that one repealed the other, it is also certain
that the continuance of the right of action and the lien, if
any, being in the repealing act, both took effect simultane-
ously, and consequently the State had its time in court for
five consecutive years, and this brings it within the statute
of limitations.   If there be a right of action, it matters
not whether there was a lien or not.   At the time the levy
of these taxes was made, and until long after the sale in 1869

was had, there was no lien for taxes given by the statute.
Under the old sytem of proceeding against the land and
selling the fee by the collector, either passing the fee or pass-
ing nothing, no lien could properly be imposed. The idea
of the lien first became feasible when the system was
changed and the taxes were considered as a pecuniary lia-
bility against the owner, or by proceeding in a suit at law
against him to enforce the lien.

*King, Chapin & King, M. B. Jonas* and *F. Spies* for re-
spondent.

1. The State acquired no complete title to the real
estate by the forfeiture. It was at best only an inchoate
title, requiring subsequent proceedings to make it complete.
The interest of the State was simply a lien for unpaid
taxes. Gen. Stat. 1865, p. 128, § 116; p. 129, § 119; Laws
1870, §§ 17, 18, p. 119; Wag. Stat., § 225, p. 1208; Laws
1875, p. 82. "An estate can only be merged in a greater
estate." Bouvier's Law Dict., Art. *Merger.* It was im-
possible for the lien of the State to be merged, because
there was no greater estate in which it could be merged.
The fact that the State allowed and required the property
to be assessed after forfeiture, was a waiver of the forfeit-
ure. *Clarke v. Strickland,* 2 Curtis C. C. 439. But the lien
would still remain in favor of the State. *Goddard v. Ren-
ner,* 57 Ind .532; *Wood v. Colvin,* 5 Hill 228· *Bodine v.
Moore,* 18 N. Y. 347.

2. The act of 1877 is not retrospective. *Hope Mut.
Ins. Co. v. Flynn,* 38 Mo. 483; *Barton Co. v. Walser,* 47 Mo.
189; *De Cordova v. Galveston,* 4 Texas 470; *State v. Hays,* 52
Mo. 578; *State v. Auditor,* 41 Mo. 26. As a tax is not
founded on contract, but operates *in invitum,* the act can-
not be said to impair the obligation of contracts. *Caron-
delet v. Picot,* 38 Mo. 125; Blackwell on Tax Titles, p. 1;
Cooley on Taxation, p. 1.

It is no objection to the act that it requires the tax

debtor to pay attorney's fees and other costs not required of him when the tax became due and payable. Costs are incident and a necessary concomitant of every remedy, and cannot be said to be a new liability. It is not a new obligation, but something incident to the remedy. The State has complete control of remedies which it provides, and can change or modify them or give new ones, and clearly has the right to provide the means for enforcing such remedies, and to compel the payment of any costs that may accrue in enforcing the remedy prescribed. *Smith v. Byron,* 34 Ill. 364; *Paschal v. Perez,* 7 Texas 348; *Baldwin v. Newark,* 38 N. J. L. 158; *Washington University v. Rowse,* 42 Mo. 308; *Woodfin v. Hooper,* 4 Humph. 13; *De Cordova v. Galveston,* 4 Texas 470; *Brandon v. Green,* 7 Humph. 130; *Wynne v. Wynne,* 2 Swan 405; *Hope v. Johnson,* 2 Yerg. 123; *Van Zant v. Waddel,* 2 Yerg. 260; *Fisher v. Dabbs,* 6 Yerg. 119; *Wellshear v. Kelley,* 69 Mo. 343.

Nor is it any objection to the act that the right to redeem which existed when the taxes sued for became due and payable, is taken away. The tax debtor never acquired any vested right to redeem. It was but a privilege.

3. As to the statute of limitations, the circuit court erred in assuming that the liability of the tax payer to the State for the taxes was such a liability created by statute as came within the 2nd clause of section 10 of the general limitation act, and in overlooking the fact that the entire scope of that act is to prescribe limitations on civil actions proper; *Carondelet v. Picot,* 38 Mo. 125; *Brenchweh v. Drake,* 31 Ohio St. 652; *Andover v. Gould,* 6 Mass. 44; *Peirce v. Boston,* 3 Met. 520; *Camden v. Allen,* 26 N. J. L. 398; *Lindell v. Railroad Co.,* 36 Mo. 544; *Humphreys v. Lundy,* 37 Mo. 320; *State v. Randolph,* 22 Mo. 482; *Dillon v. Bates,* 39 Mo. 292; *Wickersham v. Russell,* 51 Pa. St. 71; *Council v. Moyamensing,* 2 Pa. St. 224; and in assuming further that all these summary proceedings on the part of the State for enforcing her lien for the payment of the public taxes were civil actions, and not mere statute proceed-

ings to the exclusion of civil actions proper; and in holding that this suit was barred under the act of March, 30th, 1872, section 226 (225), which was repealed before the five years' limitation had run against it, even if the section 10 of the general statute of limitations ever applied to the suit, or to the liability on which it was founded.

There can be no doubt as to the power of the Legislature to make such changes in the statute of limitations. *Seibert v. Copp*, 62 Mo. 182; *Bigelow v. Bemis*, 2 Allen 496; *Smith r. Morrison*, 22 Pick. 430; *Brigham v. Bigelow*, 12 Met. 268, 273; *Bradford v. Shine*, 13 Florida 393; Angell on Limitations, (6 Ed.) pp. 16, 17; *Mayor v. Colgate*, 12 N. Y. 152; *Stephens v. St. Louis Nat. Bank*, 43 Mo. 389.

The lien of the tax assessment on land in favor of the State, dates from the time of assessment and clings tenaciously to the land until the taxes are paid or discharged according to law. Wag. Stat., § 60, p. 1170; § 172, p. 1194; § 226, p. 1209; Acts 1877, p. 384, § 1; *Blossom v. Van Court*, 34 Mo. 390; *McLaren v. Sheble*, 45 Mo. 130.

The taxes sued for do not constitute a "liability created by statute," and, therefore, are not barred by the five years limitation clause of section 10, Wag. Stat., p. 918. The power to tax is inherent in, and a necessary incident of, every sovereignty, and may be carried to any extent the government may choose. It is only limited by the constitution and legislative enactments of the State. Cooley on Taxation, 3; Burr. on Taxation, 370; Blackwell on Tax Titles, (3 Ed.) 28, 29; Cooley's Const. Lim., (3 Ed.) 479; *McCulloch v. Maryland*, 4 Wheat. 316, 427, 428; *Providence Bank v. Billings*, 4 Peters 514, 561. The power to tax creates the liability to pay. Revenue laws do not create the liability—they provide the means and mode of assessing and collecting the taxes and enforcing the payment thereof. When a proper assessment is made under revenue laws, then the liability of the property holder becomes complete, and in consideration of this liability, the property holder is entitled to the protection which the gov-

crnment affords. *Phila. Association v. Wood,* 39 Pa. St. 73, 82; *Youngblood v. Sexton,* 32 Mich. 406, 420, 426.

*C. M. Napton* also for respondent.

1. Section 116 of the revenue laws of 1865 cannot be construed as vesting absolute title in the State, so as to merge the State's lien in the title thus acquired. The whole act must be considered together. The following sections militate against that view. §§ 108, 117, 120, 123, 101, &c. The intent of the law was to furnish a means of collecting revenue, not to cause absolute forfeiture of land save in the last extremity.

2. The proceedings to collect taxes under those revenue laws, were not equivalent to " office found," and there was no such suit at law when the party has his day in court as to enable the State to divest the land-owner of his title. There was no " due process of law " without which no one can be deprived of his property. If, therefore, section 116 be so construed as to vest absolute fee simple in the State, it is unconstitutional.

3. If the State's lien for taxes did not become extinguished by section 116, then the act of 1877 cannot be said to be retroactive in its operation, as it only changed the remedy, the manner of enforcing a lien already acquired, and said act of 1877 is, therefore, not unconstitutional.

4. The State can abolish the statute of limitations or extend the time limited for bringing any particular action. Before the right to bring this suit had expired the acts of 1872 and 1875 extended the time in which it might be brought, and it was brought within the time limited by these acts.

NAPTON, J.—This action originated in the circuit court of St. Louis city, to enforce the lien claimed by the State for back taxes, as directed by the revenue law of April 12th, 1877. A demurrer was filed to the petition, which was sustained by the circuit court, but overruled by the

court of appeals, and the demurrer presents the only question in the case. This land was forfeited to the State for the non-payment of taxes for the year 1868 under the revenue law of 1865, and it is insisted that under that law the State acquired the title to all lands not sold to individual purchasers, and consequently the lien of the State was merged in this title, and this extinguished the taxes. This construction is based upon the terms of the 116th section of the act, which reads: "Every tract or town lot offered for sale by the collector, as hereinbefore provided, and not sold for want of bidders, shall be, and the same is hereby declared forfeited to the State of Missouri, and *thence-forth all right, title and interest of every person whomsoever in and to such land or lot shall be considered as transferred to and vested absolutely in the State*, and such real estate shall not afterwards, in any case, be subject to taxation and sale as other lands, except as hereinafter provided, until again sold to some person by the State or redeemed." The 117th section provides that "lands and town lots forfeited to the State as aforesaid, may be redeemed at any time within two years from the date of the sale thereof, by the owner or claimant paying the collector of the proper county double the amount for which such real estate was forfeited, and *all taxes accruing thereon to the time of redemption*, with 15 per cent. interest on each year's tax from the 1st day of January in each year, to the time of such redemption." The 120th section provides that "such real estate last named shall not be sold for a less sum than the amount of the State and county taxes for which the same was forfeited, *together with all subsequent taxes*, costs and interest up to the time of sale." The 123rd section declares that "at any time after the close of any public sale made under the provisions of the last four preceding sections, the collector may, and he is hereby directed to sell any of said real estate that may be forfeited to the State and unredeemed *or unsold and recorded on the forfeited list*, at private sale to the

29—70

person who will pay the full amount, including costs, interest and *taxes due thereon.*"

The act had previously provided (section 108) that "real estate sold under the provisions of this act may be redeemed at any time before the expiration of two years from the date of the sale, by paying to the treasurer of the proper county double the amount for which the same was sold, and to the collector all taxes accruing after the sale." The 99th section had made it the duty of the clerk of the *county court* to attend the sale for taxes and make a record thereof in a book called the "sale book," in which the amount of State and county taxes were to be recorded, and provided that "all such real estate as shall remain *unsold for want of bidders.* shall be entered by the clerk opposite such *unsold* tract or lot, 'sold to the State.'" Section 100 provides that "it shall be the duty of said clerk, after the sale aforesaid, to make out and record in a well bound book, to be kept in his office, open to inspection, a full and complete list of all real estate *sold to the State* under the provisions of this act, adopting, as near as may be, the form used in the precept, which list, so recorded, shall be called the '*forfeited list.*'" By section 105 the clerk is ordered to "transmit to the *State auditor* a statement under the seal of said court, and upon the blanks to be furnished by said State auditor, showing the *separate amount of State and county taxes*, and the interest and costs thereon arising from such sale *due the State and county* respectively, and at the same time he shall, in like manner, certify to the auditor the amount of taxes due the State and county respectively charged on real estate *forfeited to the State* at such sale, together with the interest and costs thereon." Section 103 provides that "real estate sold under the provisions of this act *may be redeemed* at any time before the expiration of two years from the date of the sale, by paying to the *treasurer of the proper county* double the amount for which the same was sold, *and to the collector* all taxes *accruing after such sale.*" Section 118 declares it to be the duty of the several

clerks of the county courts of this State, (or county auditor, as the case may be,) to " certify under the seal of said court, *to the auditor*, a full and correct statement, showing the amount which has been paid to the collector on account of redemption of real estate forfeited to the State as aforesaid, *showing therein the amount of State and county taxes separately*, and the amount of interest and costs due each, a true copy of which statement shall be filed and kept in the office of such clerk or county auditor. At the same time it shall be the duty of the collector to pay into the State treasury *the proportion of such redemption money belonging to the State*, and take duplicate receipts therefor, and deliver one to the auditor, and shall pay monthly *the proportion of said redemption money belonging to the county* into the county treasury." And section 127 says: "Immediately after any public sale of forfeited lands, the collector making such sale shall pay into the State treasury *the proportion of money* arising from such sale *due the State*, including whatever amount he may then have in his hands belonging to the State, arising from private sale of forfeited lands and lots under this act, and shall, in like manner, at his first annual settlement thereafter, pay into the State treasury the amount due the State arising from the private sale of forfeited lands, aforesaid; and, in like manner, said collector shall, immediately after such public sale of forfeited lands aforesaid, pay *into the county treasury* the whole amount of money *then due the county*, both arising from the public and private sales of said *forfeited list* up to that time."

We concede that it is not the province of the judiciary to disregard the plain meaning of a statute on the ground

1. INTERPRETATION OF STATUTES.

that it seems unwise or inexpedient, or fails to effect the purpose which the court may believe to have been in view. The Legislature can alone correct errors or repeal impolitic acts; but where the provisions of a law are inconsistent and contradictory to each other, or a literal construction of a single section would conflict with every other following or preceding it, and with the

entire scope and manifest intent of the act, it is certainly the duty of the courts, if it be possible, to harmonize the various provisions with each other, and to effect this it may be necessary to depart from a literal construction of one or more sections.

It is upon the phraseology of the 116th section that reliance is placed to establish the position of the demurrer that upon a forfeiture of land to the State, "all right, title and interest of every person whomsoever in and to such land or lot shall be considered as transferred to and vested absolutely in the State." A literal construction of the terms used, it may be admitted, would lead to such a conclusion, but that such an adherence to the letter of the section is inadmissible, we think, apparent from the following reasons:

2. REVENUE LAW OF 1865: forfeited lands: State's lien for taxes

1. It will be seen by an examination of sections 108, 117, 120 and 123, which I have quoted above, and indeed the whole tenor of the act, that the lands and lots placed on the forfeited list continue to be taxed every year after forfeiture as well as before—not in the same mode precisely for obvious reasons—but they are still taxed, with interest and costs. The last clause of section 116 reads: "And such real estate shall not afterwards, in any case, be subject to taxation and sale *as other lands*, except as hereinafter provided, until again sold to some person by the State or redeemed." That is, as I understand it, they are put in a separate list called the forfeited list, and consequently are not taxed *as other lands* are, but in a mode prescribed for this class of lands. Now, the present constitution of this State, (art. 10, § 6,) declares that "the property, real and personal, of the State, counties and other municipal corporations, and cemeteries, shall be exempt from taxation," and every constitution which has ever been made for the State contains the same provisions—and every revenue law, so far as I have examined them, both before and since that of 1865, exempts lands belonging to the State from taxation. The act of 1865, in the 2nd section of the 1st article, ex-

pressly exempts from taxation "lands and other property *belonging to the State,*" so that, if this 116th section is to be interpreted literally as investing the State with an absolute title to all these lands and lots on the forfeited list, all the provisions in the act for a continued taxation of them are nugatory and void, and the State instead of getting money, which is supposed to be the object of a revenue law, is becoming a great landed proprietor.

2. The owner's right of redemption within two years after forfeiture, is given in the section immediately succeeding the one declaring the forfeiture to vest the State with an absolute title. It is difficult to reconcile the claimant's right of redemption given by this 117th section with the absolute title declared to have been previously vested in the State by the 116th section, without some modification of the term "absolute title." A title liable to be destroyed by events subsequent to its emanation must be regarded rather as a contingent, or defeasible, or conditional one.

3. One would suppose that the proceeds of a sale of State lands, belonging absolutely to the State, would go into the State treasury; yet, we find from the sections I have quoted, especially section 118, that the collector only pays into the State treasury the proportion of redemption money belonging to the State, and into the county treasury the proportion of such redemption money belonging to the county. If an absolute title has vested, the county must have been regarded as a joint tenant, or a tenant in common with the State!

4. The management of land belonging to the State by all our legislation, belongs to the register's office, where the swamp lands donated by the United States and the sixteenth sections for school lands, and the military bounty lands and the 500,000 acre grant, are all disposed of. But this revenue act requires all matters acted on by county officers to go to the State auditor, as will be seen by reference to section 105, and the clerk's certificate as to the

amount of taxes due the State and county respectively, and the amount of costs, &c., thereon, is transmitted the State auditor, thereby showing the understanding of the Legisture that they were providing for revenue and not for the acquisition or sale of lands.

5. The loose and inaccurate phraseology of the 116th section seems partially to have found its way into the 99th and 100th sections that preceded it, by the former of which the clerk of the county court, who was directed to keep what is termed a sale book, was further directed to enter in said book opposite to any tract that remained *unsold* for want of bidders, the words " *sold* to the State ;" this list is subsequently termed the "*forfeited list*," which last name certainly conveys the meaning of the framers of the act rather more satisfactorily than the direction to place the word " *sold* " opposite to a tract because it was *unsold*.

6. The revenue law of 1871 and 1872, is based on the same general scheme with that of 1865, avoiding, however, the blunder of section 116, and simply declaring in reference to the forfeited lists, that the State retained a *lien* on the lands on such lists for taxes, interest and costs due thereon, (§ 226 of the act of 1872,) and such lien is all that was designed by the law of 1865, when all its various provisions are compared; and this act of 1872 may be regarded as a legislative interpretation of the former law.

Seeing then that a literal interpretation of section 116 and of sections 99 and 100 would conflict, not only with several other sections preceding and succeeding them, but with the main scope and sole purpose of the act, we are forced to the conclusion that the State's lien, recognized in the act of 1872, and continuously thenceforward was all the estate or title intended to be vested in the State by the act of 1866, and consequently that the position assumed in the demurrer that the taxes were extinguished by this supposed sale to the State, cannot be sustained.

The second point relied on by the demurrant, that the act of 1877, under which this suit was brought, is uncon-

3. BACK TAX ACT OF
1877, CONSTITU-
TIONAL.
stitutional, seems to be entirely based on the position taken in regard to the construction of the 116th section of the act of 1865–6, which has been already construed. This act of 1877, it is urged, imposes a *new obligation*, and is therefore obnoxious to the prohibition contained in the 15th section of the second article of our constitution, which forbids a law retrospective in its operation. And this, it may be conceded, would be so if the 116th section, by transferring the entire title in the land on the forfeited list to the State, thereby extinguished the taxes previously due. As, however, our opinion is not in accordance with this view, I will pass this point and proceed to consider the last one discussed, which relates to the statute of limitations.

The statute of limitations provides (2 Wag. Stat., p. 917) that "*civil actions upon a liability created by a statute,*"
4. ——: statute of
limitation.
other than a penalty or forfeiture, which latter are barred in three years, shall be barred in five years after the cause of action shall have accrued; and section 33 declares that " the limitations prescribed in this chapter shall apply to actions brought in the name of this State, or for its benefit, in the same manner as to actions by private parties." The summary proceedings authorized by the acts of 1865 and 1867, which resulted in a judgment *against the land,* could not be regarded as a " civil action" within the meaning of this clause in the general statute of limitations. The act of 1872 for the first time gives an action against the owner of the land for the back taxes now sued for. There was no act of the Legislature before that authorizing any suit against the owner, and that act expressly repealed the limitation in the general statute by declaring that the action might be brought *at any time* " before the expiration of said fifth year as well as after the expiration thereof." This section of the act of 1872 was by the eighth section of the act of March 31, 1875, expressly repealed, and section 5 of the act of 1875, again gave power to the county court to com-

mence suit, at any time, in any court of competent juris-
diction, against the person of the owner of forfeited prop-
erty.   The act of the 12th of April, 1877, provides that
"all actions commenced under the provisions of this act
shall be prosecuted in the name of the State of Missouri
at the relation and to the use of the collector, and *against
the owner* of the property."   The judgment, however, is
that "the lien of the State be enforced" and the land or
lot sold under a special *fieri facias*.   This judgment is de-
clared to be a first lien on said land.   Section 15 declares
that "the provisions of section 33 of chapter 191, of the
general statutes, in regard to limitations shall not apply to
actions brought by the State under this act."

No authorities are necessary to establish the proposi-
tion that a statute of limitations cannot begin to run until
a right of action exists or is given to some one capable of
suing on it.   Conceding the three statutes above referred
to as conferring a right of action on the State and there-
fore within the meaning of the general statute of limita-
tions concerning civil actions; and conceding further that
the acts of 1872 and of 1875 were governed by the general
statute although impliedly repealing them, let us see how
this action under the act of 1877 stands.   Before the right
of action under the act of 1872 expired by the limitation
of five years in the general statute, the act of 1875 repealed
the section which gave this right but authorized a new
action, substantially such as had been authorized by the
act of 1872, and the right of action under this act of 1875
had not expired when the act of 1877 was passed.   This
act of 1877 was therefore not a revival of a right of action
previously barred.   It would no doubt have been unconsti-
tutional had it been of this character, but the act of 1872
gave five years within which to bring suit, and before the
expiration of this five years the act of 1875 repealed the
right of action under it, and authorized a new action under
that act, and it is not pretended that the present suit was
brought more than five years after this right of action

conferred by the act of 1875; so that, conceding the construction contended for in this case, that the action given by the acts of 1872, 1875 and 1877 were within the general provisions of the statute of limitations, it was still not barred. The judgment of the court of appeals is affirmed. The other judges concur.