# W. W. RIGGINS et al. v. C. W. TYLER, County Judge.

## (Nashville. December Term, 1915.)

1. **STATUTES.** Title of act. Sufficiency.
   The title of Priv. Acts 1915, ch. 28, reciting that it was "An act
   to authorize counties in this State having a population of not
   less than 33,500 nor more than 34,000 to issue bonds for high-
   way purposes; to provide for the disposition of the fund thus
   raised; and also for prompt payment of principal and interest
   when due"—is not invalid under Const. art. 2, sec. 17, declaring
   that no bill shall become a law which embraces more than one
   subject, which shall be expressed in its title. (Post, pp. 580-590.)

   Acts cited and construed: Acts 1915, ch. 28; Acts 1905, ch. 233;
   Acts 1895, ch. 81.

   Cases cited and approved: Manufacturing Co. v. Falls, 90 Tenn.,
   466; State ex rel. v. Schlitz Brewing Co., 104 Tenn., 715; Rail-
   road v. Byrne, 119 Tenn., 278; Darnell v. State, 123 Tenn., 663;
   Kirk v. State, 126 Tenn., 7; Garby v. Harris, 7 Exch., 591;
   Met. Bo. Wks. v. Steed, L. R., 82, B. Div., 445; George v. B.
   of E., 33 Ga., 344; State v. Heman, 70 Mo., 441; Maysville &
   L. R. Co. v. Herrick, 13 Bush. (Ky.), 122; Rutherford v. Greene,
   2 Wheat, 196; Babcock v. Goodrich, 47 Cal., 488; State ex
   rel. v. Turnpike Co., 34 Tenn., 88; Boro v. Hidell, 122 Tenn.,
   80; Todtenhausen v. Knox Co., 132 Tenn., 169; Burnett v.
   Maloney, 97 Tenn., 697; Lauderdale Co., v. Fargason, 75 Tenn.,
   153.

   Cases cited and distinguished: Wire & Co. v. Morgan, 101 Tenn.,
   273; Maxey v. Powers, 117 Tenn., 381; Ashby v. State, 124 Tenn.,
   684; Palmer v. Express Co., 129 Tenn., 116; Samuelson v. State,
   116 Tenn., 470; Nichols & Shepherd Co. v. Loyd, 111 Tenn., 145.

2. **STATUTES.** Construction. Title of act. Indefiniteness.
   Acts 1915, ch. 28, entitled "An act to authorize counties having
   a population of not less than 33,500 nor more than 34,000 to

134 Tenn. 37

Riggins v. Tyler.

issue bonds for highway purposes; to provide for the disposition of the fund thus raised; and . . . for prompt payment of principal and interest," declares that the quarterly court of any county having the population mentioned may, when regularly in session, issue bonds for highway purposes. The act nowhere provides a standard to measure the population of counties. *Held* that, as the legislature will not be presumed to have done a vain thing, and as the language of statutes may be construed to give effect to the intent, the title must be deemed sufficient on the theory that the population of counties shall be ascertained from the last federal census; that being the established method. (*Post, pp.* 580-590.)

## FROM MONTGOMERY.

Appeal from the Chancery Court of Montgomery County.—J. W. STOUT, Chancellor.

H. N. LEECH, AUSTIN PEAY and C. TATE, for appellants.

SAVAGE & FORT and DANIEL & DANIEL, for appellee.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The validity of chapter 28 of the Acts of 1915 is called in question. The act is as follows:

"An act to authorize counties in this State having a population of not less than 33,500 nor more than 34,000

to issue bonds for highway purposes; to provide for the disposition of the fund thus raised; and also for prompt payment of principal and interest when due.

"Section 1. Be it enacted by the General Assembly of the State of Tennessee, that the quarterly court of any county in this State having the population mentioned in the caption is hereby authorized when regularly in session to issue bonds for highway purposes.

"Said bond issue shall not exceed in any one year two-thirds of one per cent. of the taxable values of the county as shown by the assessment for the preceding year; and shall never in the aggregate exceed three per cent. of the taxable values of such county. The bonds shall bear not more than six per cent. interest; shall be negotiable at not less than par; and shall mature not more than thirty years from date of issue. The quarterly court may make such orders as to bond issue and as to the management and disposal of the fund arising therefrom as they may deem proper; it being the purpose of this act to vest the court with full authority in the matter. Quarterly reports shall be made by the court and spread on the minutes, showing the manner in which the fund is disbursed and giving in detail the work done so that a complete record of same may be kept. Suitable provisions shall be made by the quarterly court to pay interest promptly and to retire the bonds at maturity or when subject to call; and the court is hereby authorized to make such orders as it may deem necessary for this purpose.

"Sec. 2. Be it further enacted, that this act take effect from and after its passage the public welfare requiring it.

"Passed January 26, 1915."

The objection made is that the title is not in compliance with article 2, section 17, of the Constitution. However, if the title is void at all, it is not for the reason stated, but because too indefinite as to the county, or counties to which the act is applicable.

But it is not void, if there is any standard of sufficient general publicity to which it can be justly held the legislature had reference. Is there such a standard? There are hundreds of acts on our statute books in which reference to the last preceding federal census is made for the purpose of applying the population basis fixed in such acts, and in this manner ascertaining the county or counties to which the act was intended to apply. The uniform history of our legislation for more than forty years, in acts rested on a population basis, makes it certain that if the legislature had in mind any source at all for obtaining the means for applying the figures, contained in the act to any county or counties of the State, that source was the last preceding federal census of 1910. It could not have been contemplated that a trial census of the whole State or of several counties would be made for such purpose. That would be highly absurd, and would convict the legislature of gross folly, as well as of a purpose to inflict on the State an unwarrantable and needless expense. If they had in mind therefore any standard at

all, it was the federal census of 1910. If this be not true, they had no standard at all. But this latter supposition would fasten on the legislature a purpose to pass an act so vague and general as to be insensate and therefore void. Yet the recognized rule is that where of two constructions one would make the act void and the other valid, the latter is to be chosen, even though it be not the most obvious, or the most probable. This latter construction must therefore be adopted, and we must hold that the legislature had in mind the federal census of 1910.

But this census was not specially referred to in the caption, or title, or anywhere in the act. Is it therefore unavailable? Although we feel sure they could have had in mind no other standard, and are morally certain they had in mind that particular standard, are we precluded from making effective the legislative purpose because there was no reference in direct terms to that standard?

We think not. A very liberal rule of construction has been adopted in this State, on questions of this kind. The substance of this rule is shown in the following excerpts from decided cases:

"The legislature cannot be supposed to intend its own stultification. When, therefore, to follow the words of an act leads to absurdity in its consequences, that constitutes sufficient authority to depart from them." *Wise & Co.* v. *Morgan,* 101 Tenn., 273, 282, 48 S. W., 971, 973, 44 L. R. A., 548. "Statutes must be construed, if possible, so as to make them sensible, and

to effect and carry out the purposes for which they are enacted. It is not to be presumed that the lawmakers will pass a defective or insensible act, or one in conflict with the organic law. . . . The legislative intent will prevail over the strict letter or literal sense of the language used, and, in order to carry into effect this intent, general terms will be limited, and those that are narrow expanded." *Maxey* v. *Powers,* 117 Tenn., 381, 403, 404, 101 S. W., 181. "In order to effectuate the legislative intent 'words may be modified, altered, or supplied so as to obviate any repugnancy or inconsistency with such intention.'" *Ashby* v. *State,* 124 Tenn., 684, 691, 139 S. W., 872.

A resume of this subject appears in *Palmer* v. *Express Co.,* 129 Tenn., 116, 158-161, 165 S. W., 236, as follows:

"The rule of law applicable to this subject is that, if there be two constructions to which an act is susceptible, one of which will make it unconstitutional and the other of which will save it, the duty of the court is to adopt the latter, although it is not the most obvious or natural construction. *Manufacturing Co.* v. *Falls,* 90 Tenn., 466, 16 S. W., 1045; *State ex rel.* v. *Schlitz Brewing Co.,* 104 Tenn., 715, 59 S. W., 1033, 78 Am. St. Rep., 941; *Samuelson* v. *State,* 116 Tenn., 470, 498, 95 S. W., 1012, 115 Am. St. Rep., 805; *Railroad* v. *Byrne,* 119 Tenn., 278, 291, 292, 104 S. W., 460; *Darnell* v. *State,* 123 Tenn., 663, 134 S. W., 307; *Kirk* v. *State,* 126 Tenn., 7, 150 S. W., 83, Ann. Cas., 1913D, 1239. In *Samuelson* v. *State* it is said: 'While it is true that, in arriving at the meaning of the legislature, primarily,

the grammatical sense of the words used is to be adopt-
ed yet if there is any ambiguity, or if there is room for
more than one interpretation, the rules of grammar
will be disregarded where a too strict adherence to
them would raise a repugnance or absurdity, or would
defeat the purpose of the legislature.' *Garby* v. *Har-
ris,* 7 Exch., 591; *Met. Bo. Wks.* v. *Steed,* L. R., 82, B.
Div., 445; *George* v. *B. of E.,* 33 Ga., 344; *State* v.
*Heman,* 70 Mo., 441. Many cases might be cited in
which the future tense has been read as including the
present and the past, where that was necessary to carry
out the meaning of the legislature. Thus an enabling
act relating to married women who 'shall come into
the State' may apply to one who came into the State
before the passage of the law. *Maysville & L. R. Co.*
v. *Herrick,* 13 Bush (Ky.), 122. Where an act pro-
vided that certain land 'shall be allotted for and given
to' an individual named, it was held that the words
passed an immediate interest. *Rutherford* v. *Greene,*
2 Wheat., 196, 4 L. Ed., 218. In *Babcock* v. *Goodrich,*
47 Cal., 488, the phrase 'current expenses of the year'
was made to read, 'expenses of the current year';
it being evident that the latter form of words
more correctly expressed the legislative intent.
These cases are but a recognition of an old and
well-established rule of the common law, applicable
to all written instruments, that '*erba intentioni,
non e contra debent inservire;*' that is to say, 'words
ought to be made subservient to the intent, and
not the intent to the words.' The case of *Darnell*

v. *State,* supra, furnishes a strong example in close
analogy. In that case the court, after mentioning the
fact that there were only two assignments that needed
to be considered, said: 'The first of these is that the
act under which the jury was impaneled, commonly
known as the "jury law of Franklin county" (Acts
1905, chapter 233) is unconstitutional, because the body
of the act is broader than its title. The contention is
based upon the following: The act is entitled "An act
to create a board of jury commissioners for counties
in this State having a population of not less than 20,
292, and not more than 20,400 inhabitants according
to the federal census of 1900, or that may have that
number of inhabitants by any subsequent federal cen-
sus." After making various and sundry provisions to
carry out the purposes indicated by the title, section 19
follows, near the close, in this language: "Be it fur-
ther enacted, that the provisions of this act shall apply
to all grand and petit juries in circuit and criminal
courts of this State." The same question was decided
against plaintiff in error's contention in the case of
*Allen Damron* v. *State,* from Bedford county, at the
December term, 1909. Damron's Case involved the
jury law of Bedford county (chapter 355 of the Acts
of 1907), which was a substantial copy of the Franklin
county jury law involved in the present case. That
case was thoroughly considered by the court, after full
argument, oral and written, and a second time on peti-
tion to rehear filed by the plaintiff in error. The court
held, upon a consideration of the whole statute, that it

was the evident intention of the legislature that the section just quoted should be construed as if it read as follows, viz.: "That the provisions of this act shall apply to all grand and petit juries in all circuit and criminal courts of this State in counties of the population herein prescribed." We are of the opinion this was a sound construction, and we adhere to it."

In *State ex rel.·v. Turnpike Co.,* 2 Sneed, 88, it appeared that the act under which the turnpike company was incorporated authorized it to erect a tollgate "within two miles of the town of Clarksville." This language, taken literally, authorized the location of a gate at any point less than two miles from the town of Clarksville. The court, however, held that the words "but no nearer" should be supplied, and the act made to read "may erect a tollgate within two miles of Clarksville, but no nearer."

In *Wright* v. *Cunningham,* the court had under consideration an amendment to a former statute concerning the adoption of a stock law .in certain counties. In dealing with this amendment it was necessary to construe the following language, which was insisted by counsel to be fatally obscure, viz.:

"The ticket shall provide for those favoring the small stock law, 'for the small stock law' and those 'against said law.' "

The court said:

"Evidently there was an omission between the words 'and' 'those' of the word 'for,' and after the word 'those' an omission of the expression 'opposing the

ϟmall stock law.' As thus corrected, the sentence would
ɪ ᵛad: 'The ticket shall provide for those favoring the
small stock law, "for the small stock law," and for
those opposing the small stock law, "against the small
stock law." ' The word 'said' in the expression
'against said law,' of course refers to the small stock
law, and the intention of the act was that the ticket of
those opposing the law should read 'against the small
stock law.' It is a well-known canon of construction
that an ambiguous or meaningless clause in a statute
may be rejected, or words supplied by intendment to
express the obvious intention of the legislature." 115
Tenn., 445, 452, 453, 91 S. W., 293.

In *Maxey* v. *Powers,* supra, the court had under ex-
amination an act of the legislature which abolished cer-
tain civil districts in Knox county. The act provided
on its face that it should not go into effect until Sep-
tember 1, 1906, but on that day all of the justices went
out of office by expiration of their terms, and the act
in question did not contain any provisions for the elec-
tion of the justices for the new districts made by the
enlargement of certain of the old ones, and the abolish-
ment of others. The regular August election was the
first Thursday in August, 1906. The question was
whether the justices of the peace for these new districts
could be elected at such August election. The county
authorities undertook, through the county court, to re-
district the county, just as the legislature had done,
and to fix the change to become effective the third Mon-
day in July; so the August election was held under

this arrangement, and the title of these offices was subsequently contested in the case referred to. It was contended against this title that the county court was without jurisdiction; and, inasmuch as the act did not go into effect until September 1, 1906, no election could be held under it; hence it was contended that the election was wholly void. The court, however, was of a different opinion. It was held that, inasmuch as the Constitution and the general law fixed the first Thursday in August preceding the expiration on September 1, 1906, of the constitutional term of six years of the then incumbents of the office of justice of the peace—

"it must be presumed that the General Assembly had these provisions in mind when it provided that the act in question should not go into effect until September 1, 1906, and intended that an election be held under them for election of officers for the newly created districts." 117 Tenn., page 400, 101 S. W., 181.

In *Railroad* v. *Byrne,* supra, it was said that the same principles apply in the interpretation of the titles of statutes. 119 Tenn., 278, 291, 292, 104 S. W., 460. An interesting illustration of the principle is shown in the interpretation in that case of the title of chapter 76 of the Acts of 1895 establishing the court of chancery appeals, showing how the subject-matter of chapter 82 of the Acts of 1907, amending the former statute, were included within the title of such former act. 119 Tenn., 294-315, 104 S. W., 460. A briefer illustration is found in *Nichols & Shepherd Co.* v. *Loyd,* 111 Tenn.,

145, 76 S. W., 911. The title of the act there examined was:

"An act to amend sections 2, 3 and 4 of an act passed March 21, 1891, being chapter 122 of said acts, and providing for the authentication of copies of charters to be filed with the secretary of State, registering abstracts of same in the register's office in each county in which the company desires, or proposes to carry on business." Acts 1895, chapter 81.

Referring to the objection made the court said:

"The objection refers to the last clause of the caption, 'registering abstracts of same in the register's office in each county in which the company desires or proposes to carry on business.' The clause referred to, as it stands, is ambiguous, and does not, indeed, make good sense, and as such it may be rejected as surplusage. We think, however, that by oversight the words, 'and doing away with the,' were left out. With these words inserted before the words 'registering,' the clause quoted would make sense. . . . These words, if necessary, would be supplied by intendment, being, as they are, perfectly obvious." 111 Tenn., 148, 149, 76 S. W., 911.

The general doctrine is well stated in the following quotation from Lewis' Sutherland on Statutory Construction, section 377, as follows:

"Uncertainty of sense does not alone spring from uncertainty of expression. It is always presumed, in regard to a statute, that no absurd or unreasonable result was intended by the legislature. Hence if, viewing

a statute from the standpoint of the literal sense of its language, it is unreasonable or absurd, and obscurity of meaning exists, calling for judicial construction, we must, in that event, look to the act as a whole, to the subject with which it deals, to the reason and spirit of the enactment, and thereby, if possible, discover its real purposes; and, if such purposes can reasonably be said to be within the scope of the language used, it must be taken to be a part of the law, the same as if it were plainly expressed by the literal sense of the words used. In that way, while courts do not and cannot properly bend words out of their reasonable meaning to effect a legislative purpose, they do give to words a liberal or strict interpretation within the bounds of reason, sacrificing literal sense and rejecting interpretation not in harmony with the evident intent of the lawmakers, rather than that such intent shall fail.''

Further, on the general subject, see *Boro* v. *Hidell*, 122 Tenn., 80, 96, 120 S. W., 961, 135 Am. St. Rep., 857, and *Kirk* v. *State*, 126 Tenn., 7, 13, 14, 150 S. W., 83, Ann. Cas., 1913D, 1239.

Construing the title of the act here in question as necessarily referring to the federal census of 1910, it is beyond question that the county intended was Montgomery county. There is no doubt that this, or any other county, in the State, might have been designated in direct terms, and the power conferred to issue bonds for public purposes. *Todtenhausen* v. *Knox County*, 132 Tenn., 169, 172, 173, 177 S. W., 487, and cases cited.

For other cases to same effect, see *Burnett* v. *Maloney,* 97 Tenn., 697, 37 S. W., 689, 34 L. R. A. 541, and *Lauderdale County* v. *Fargason,* 7 Lea (75 Tenn.), 153.

There was an amendatory act (chapter 330) passed at the same session of the legislature purporting to amend the title of chapter 28, so as to embrace counties having the population basis referred to, "under the last or any subsequent federal census;" but, having held the original act valid, it is unnecessary for us to consider whether the amendment of the title merely would enable it to embrace counties that may hereafter have the same population. No county is involved in the present controversy except Montgomery, the bill having been filed to enjoin the issuance of certain bonds authorized to be issued by that county for road purposes, under chapter 28 aforesaid.

The chancellor sustained a demurrer to the bill, and we think his decree was .correct, and it is therefore affirmed.