KNOXVILLE POWER & LIGHT CO. *v.* FRANK M. THOMPSON
*et al.*

(*Knoxville.* September Term, 1925.)

1. **STATUTES.** Justification for adding words to legislative enactment
is to carry out intention of the lawmakers.

Justification for adding words to legislative enactment is to carry
out intention of the lawmakers.   (*Post, pp.* 226, 227.)

Acts cited and construed: Acts 1925, ch. 129.

Cases cited and approved: Riggins v. Tyler, 134 Tenn., 577; Todten-
hausen v. Knox County, 132 Tenn., 169; Sutton v. State, 96 Tenn.,
697; Woodard v. Brien, 82 Tenn., 520.

2. **CONSTITUTIONAL LAW.** Legislative act will never be declared un-
constitutional, if it can possibly be avoided.

Act of legislature will never be declared unconstitutional, if it is
possible to avoid so doing.   (*Post, p.* 227.)

3. **CONSTITUTIONAL LAW.** Court is not authorized in adding to
legislative act so as to make new law of it.

In order to save the legislative act, court is not authorized in so read-
ing it or adding to it as to make of it a new law, which it is to be
doubted legislature ever designed.   (*Post, p.* 227.)

4. **STATUTES.** Court will exercise ingenuity to give effect to legisla-
tive act, where intent of lawmakers is clear.

Where intent of lawmakers is clear, court will exercise its ingenuity
to give effect thereto, but, where intent is doubtful, court must be
more cautious.   (*Post, p.* 227.)

5. **STATUTES.** Law prohibiting operation of one-man street cars in
cities over 30,000 held unconstitutional as indefinite.

Acts 1925, chapter 129, prohibiting operation of one-man street cars in
cities over 30,000 population, *held* unconstitutional as being too

indefinite to be administered, as providing no basis for determining to what municipalities it is intended to be applied. (*Post, pp.* 227, 228.)

CHAMBLISS, J., dissenting.

Acts cited and construed: Acts 1925, ch. 129.

Cases cited and approved: Riggins v. Tyler, 134 Tenn., 580; Sutton v. State, 96 Tenn., 696.

FROM KNOX.

Appeal from the Chancery Court of Knox County.— HON. CHAS. HAYS BROWN, Chancellor.

CATES, SMITH, TATE & LONG, for Power & Light Co.

FRANK M. THOMPSON, Attorney-General, in *pro per*.

R. A. MYNATT, Assistant Attorney-General, for Anderson and himself.

HORACE B. STOUT, for Public Utilities Comm.

W. H. PETERS, JR., and FRANK M. THOMPSON, for City of Knoxville.

KELLY & KELLY, for Smiley.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This case involves the constitutionality of chapter 129 of the Acts of 1925. The chancellor held the act invalid. It is as follows:

"An act entitled an act to prohibit the operation of street cars within the State of Tennessee, except in cities of less than thirty thousand population, on which only one operator is in charge and to provide penalties for the violation of this act.

"Section 1. Be it enacted by the General Assembly of the State of Tennessee, that it is hereby declared unlawful for any person, firm or corporation to operate, or cause to be operated, within this State, except in cities of less than thirty thousand (30,000) population, any street car on which only one operator is in charge generally known as 'one-man' cars.

"Section 2. Be it further enacted, that any person, firm or corporation found guilty of the violations of section one of this act shall be fined not less than $100 nor more than $500 for each offense."

Cities of "less than 30,000 population" are excepted from the operation of this act. The extent of its application is too indefinite to permit of its enforcement, unless we may assume that the legislature had in mind some standard of population to which reference may be made. *Riggins* v. *Tyler,* 134 Tenn., 577, 184 S. W., 860. In that case it was held that a designation of the territory to which an act applied as a county of stated "population" without more meant a county of the stated population according to the last federal census. This interpolation identified Montgomery county, and saved the act under consideration, for it dealt directly with that county in its governmental capacity. Special laws of this kind are valid. Montgomery county might have been called by name. *Todtenhausen* v. *Knox County,* 132 Tenn., 169, 177 S. W., 487, and cases cited.

152 Tenn.—15.

The act before us, however, deals with street car companies, not with municipal corporations, and it would not be helped by invoking the rule of *Riggins* v. *Tyler,* 134 Tenn., 577, 184 S. W., 860. If we say the legislature meant to except cities of less than 30,000 population by the last census, the census of 1920, or, stating it differently, that only cities of 30,000 and over by the census of 1920 were included, then we have a void enactment. Although Jackson or Johnson City might hereafter grow away out of this classification, street car companies operating therein would escape the burdens of this legislation, because these were cities of less than 30,000 according to the census of 1920. *Sutton* v. *State,* 96 Tenn., 697, 36 S. W., 697, 33 L. R. A., 589; *Woodard* v. *Brien,* 14 Lea (Tenn.), 520. Such legislation has been held vicious in this state for forty years, and necessarily so. Jackson might grow larger than Memphis, but would still be exempt from such an act, because the exemption is based on the population shown by one particular census.

We are asked now to go beyond *Riggins* v. *Tyler,* 134 Tenn., 577, 184 S. W., 860, and to consider the exempting clause as though it read "except in cities of less than 30,000 population *by the federal census of 1920 or any subsequent federal census.*" That is, to supply the words italicized.

The justification for adding words to a legislative enactment is to carry out the intention of the lawmakers. If we read the act as suggested, it is likely that we would make a law rather than effectuate one intended by the legislature.

The exception of the smaller cities of the State from the operation of this act was obviously made to remove opposition to the bill from senators and representatives from those cities. See journals. Who can say that these legislators would have supported the bill had it been so framed as to probably include some of their rapidly growing towns within the next five years? Who then can say it was the legislative will to pass such an act as it is urged we should make of this?

An act of the legislature will, of course, never be declared unconstitutional if it is possible to avoid so doing. In order to save such an act, however, the court is not authorized in so reading it, or adding to it, as to make of it a new law, which it is to be doubted the legislature ever designed. Where the intent of the lawmakers is clear, the court will exercise it ingenuity to give effect thereto. Where this intent is doubtful, the court must be more cautious.

Rather a narrow margin now separates some of the excepted cities from the bounds of their class. Some of them will likely attain a population of 30,000 by the next census in 1930. In view of the history of the act before us, it would be a violent assumption for us to say the legislature intended that the act might operate in the excluded territory at so early a day. We cannot hazard a perversion of the legislative intent even to save the constitutionality of its enactment. Such intent does not invariably conform to constitutional limitations.

It follows that chapter 129 of the Acts of 1925 is bad. As it stands, it is too indefinite to be administered. *Riggins* v. *Tyler, supra.* If we read it as referring to the census of 1920, an arbitrary classification results.

If we read it as referring to that and any subsequent census, we judicially legislate.

The decree of the chancellor will be affirmed.

CHAMBLISS, J. (dissenting).

As appears from the opinion of Chief Justice GREEN, the unconstitutionality of this act is grounded upon the excepting clause, by which there is excluded from the operation of the act, "cities of less than thirty thousand population." It is said that the exception thus stated is incapable of definite application, in that no population basis or standard is given; no particular census or other method of computation being designated. The question thus presented has not heretofore been passed on in this exact form.

I cannot escape the conviction that the failure to designate the standard or basis is not fatal; that the *federal census* is now so generally recognized as the primary standard of urban, county, and State population that a designation of population, without more, must according to common acceptation, be taken to refer to that standard. This act simply prohibits the doing of a certain thing in this State, except in cities having less than a named population. The prohibition is effective wherever and whenever the territory of the performance is not a city having less than 30,000 population, and, in order to determine liability in any case, it would be necessary only to look to the federal census in effect at the time of the commission of the offense.

This view is in harmony with the principle announced and applied in *Riggins* v. *Tyler,* 134 Tenn., 580, 184 S.

W., 860, and in no sense conflicts with *Sutton* v. *State*, 96 Tenn., 697, 36 S. W., 697, 33 L. R. A., 589, in which latter case the legislature had expressly named a certain census, thus excluding the power to infer intention to have any future census apply and destroying the constitutionality of the act. There was no reference in the act reviewed in the Riggins Case to any federal or other census as is true in the case at bar. In that case this court read into the act the words "according to the past federal census of 1910." It is said that that case is to be distinguished from this in that it was a governmental measure authorizing the issuing of bonds by Montgomery county, and that in designating the county sought to be affected the population basis method might have been wholly disregarded and the county directly named. For this reason it is insisted that the decision is without forceful application to the instant case. Again, in the Riggins Case, the court went so far only as to read into the act, "according to the past federal census of 1910," and it is insisted that this is a precedent without value in the instant case because it is essential here that the interpolation go further and embrace the words "or any *future* federal census;" that, if reference to the past federal census only be read into the act, it would fall under the authority of *Sutton* v. *State*, 96 Tenn., 696, 36 S. W., 697, 33 L. R. A., 589.

Conceding that the Riggins Case, supra, is not direct authority, for the reasons suggested, for reading into the present act the words "according to the federal census of 1920, *or any future federal census*," it must also be conceded that the reasoning of the opinion by the distinguished Chief Justice goes strongly to sustain the

insistence that the court may and should go further than it was necessary for the court to go in the Riggins Case. And it is difficult to escape the conclusion that, if the court was justified in that case, as it clearly held itself to be, in reading into the act a reference to the only census which could have application, then this court is justified in reading into the instant act a reference to such censuses as may be necessary in order to avoid a conclusion that it was the purpose of the legislature "to pass an act so vague and general as to be insensate and therefore void."

*Sutton* v. *State*, 96 Tenn., 696, 36 S. W., 697, 33 L. R. A., 589, is in no sense authority for denial of the right to read into the act "according to the federal census of 1920 or any future federal census." The court in that case had no option to infer and read into the act anything on this subject, for the reason that the act therein reviewed expressly confined its operation to counties having a named population according to a certain census. Having expressly named one census, others were excluded. "*Expressio unius, exclusio alterius.*" The act was therefore invalid on the grounds clearly stated by Mr. Justice CALDWELL. He did not discuss the question of the right to read into the act that which might reasonably be inferred in order to sustain it, as did Mr. Justice NEIL in the Riggins Case. If it be conceded, as it surely must be, that the legislature had in mind the *federal* census standard or basis of determining the classification of any given city, then the sole further question is, Was the past, or any future census, or both, intended? When it is remembered that this is a statute prohibiting and prescribing a penalty for doing a cer-

tain thing in cities exceeding a certain size, manifestly on the very ground of the larger population of such cities, the conclusion is irresistible that the legislature intended to extend the operation of the law to all cities as they might reach the named population. This necessarily calls for reading into the act, "or by any future federal census," not only because it would otherwise be invalid, but because its plain purpose would otherwise be defeated.

But I am also constrained to adopt another view already suggested, now clearly supported by common practice and observation. Whatever may have been in the past essential in order to make definite a description by reference to population, it must surely be conceded that, in the run of the years, there has grown up a nation-wide custom, of which the courts, as well as legislative bodies, are forced to take notice, of recognizing the decennial census, taken with great care and particularity by the federal government, as the primary population basis of the cities, counties, and states of this country. So generally accepted has this custom become that clearness and definiteness of reference to urban or other populations requires an expression of some other purpose, or the designation of some other basis, if the notice is to convey the idea of a standard of population other than of the federal census. The statement that a given city is of a certain population has, without more, now come to convey, by clear implication, reference to the effective and then in force federal census. It follows  that giving the language of the excluding clause of this act, "except in cities of less than thirty thousand population," that meaning which is natural

and consistent with common acceptation, the exception must be held to refer to the federal census standard or basis, and to that particular census in force and effect upon the passage of the act, or at any future applicable period. Thus considered, the objections based upon indefiniteness in population designation cannot be sustained.

Thus finding it altogether possible to avoid declaring this act unconstitutional, I must respectfully dissent from the conclusion announced by my learned associates.