W. W. ROBERTS *v.* ROANE COUNTY *et al.*[*]

(*Knoxville.* September Term, 1929.)

Opinion filed December 21, 1929.

---

*Corpus Juris-Cyc References: Estoppel, 21CJ, section 192, p. 1190, n. 10; section 193, p. 1192, n. 20; Judges, 33CJ, section 125, p. 987, n. 42; New Trial, 46CJ, section 69, p. 107, n. 35; Officers, 46CJ, section 279, p. 1029, n. 28; section 285, p. 1031, n. 62; Sheriffs and Constables, 35Cyc, p. 1610, n. 56; Statutes 36Cyc, p. 1016, n. 74; p. 1017, n. 76.

H. M. CARR, D. O. HARRIS and O. T. TINDELL, for complainant, appellant.

HAGGARD & WRIGHT, J. R. TEDDER and JOHN F. McNUTT, for defendant, appellee.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

The complainant and appellant, W. W. Roberts, was elected to the office of sheriff of Roane County at the August election, 1924, for the term beginning on the first Monday of September, 1924. He was prevented from qualifying and from assuming the duties of the office by the action of the county judge of Roane County, who refused to induct him into office because of an alleged constitutional and statutory disqualification. Complainant's right to the office was subsequently determined by litigation, and he was inducted into office on August 3, 1925, after a lapse of eleven months and three days of the term to which he was elected.

The present suit was brought by complainant against the County, and against the county judge and the sureties on his official bond; to recover from the County a salary due him for the time he was prevented from serving as sheriff, together with the jail fees and other fees of office of which he had been deprived; and to recover from the county judge and his sureties the damages sustained by complainant because of the alleged wrongful act of the county judge in refusing to induct him into office.

The salary claimed by complainant is that fixed for the sheriff of a county of a designated population by chapter 24 of the Private Acts of 1923. The salary authorized by this statute was paid to the complainant during the latter half of his term, and Roane County

filed its cross-bill to recover from complainant the amount so paid to him, upon averments that this statute is unconstitutional and therefore constituted no authority for the agents of the County to pay, nor for the complainant to receive, any such salary from the funds of the County.

All questions of fact were eliminated from the cause by pleadings and agreements, except the amount which the sheriff was entitled to collect from the County as the profit he would have earned as jailor from the boarding of prisoners during the time he was kept out of office, measured by the difference between the amount allowed by law and the cost to the jailer of the prisoners' board. As to this, the County demanded a jury, and the jury found that it would have cost complainant the statutory allowance to provide board for the prisoners.

The chancellor held the salary statute of 1923, chapter 24 of the Private Acts for that year, unconstitutional; denied complainant's right to salary under the act; and awarded the County, as cross-complainant, a decree for the amount paid to complainant while serving the last half of his term. The chancellor awarded complainant a decree for the turnkey fees which he would have earned, and as to which there is no controversy. Complainant was denied any right to recover *ex officio* compensation, on the ground that no such compensation was ever voted by the quarterly county court by proper resolution. Following the verdict of the jury, no recovery was awarded complainant for the denial of his right to board the prisoners of the County.

The cause is here on the appeal of the original complainant; and by proper assignments of error we are asked to review (1) the holding of the chancellor as

to the constitutionality of the salary statute of 1923; (2) the holding that the County is entitled to recover from complainant the amount paid to him under the statute, even if the statute be unconstitutional; and (3) the holding that complainant is not entitled to recover *ex officio* compensation. A fourth question is made upon complainant's motion for a new trial on the question of the cost of boarding prisoners.

The four propositions for decision, above stated, are urged by complainant against Roane County. It is also assigned as error that the chancellor failed to hold the county judge, individually, and the sureties on his official bond, liable to complainant for all money damages resulting to him from the fact that he was wrongfully deprived of his office by the county judge for a period of eleven months and three days.

It is not questioned but that the county judge was acting officially and as agent of the County in his refusal to induct the complainant into office. No effort is now made by the County to repudiate this action of its agent, and the right of the complainant to recover from the County the fees and salary to which he would have been entitled if he had been inducted into office at the beginning of his term is not questioned, but is conceded upon the authority of reported cases. *Graham* v. *England*, 154 Tenn., 435, 443, and cases there cited; *Hogan* v. *Hamilton County*, 132 Tenn., 554.

It results, therefore, that the complainant has the same right to demand and receive from Roane County the compensation, fees, and salary attached by law to the office of sheriff which he would have had if he had been inducted into office at the beginning of his term, and no financial loss to him was caused by the action of the

county judge in refusing to induct him into office. This being true, we think the chancellor was correct in dismissing complainant's bill in so far as it sought a recovery against the county judge and his bondsmen.

Chapter 24 of the Private Acts of 1923 has for its caption:

"AN ACT to regulate and provide for the compensation of Sheriffs in the Counties of this State having a population of not more than 24,650 nor less than 24,624, according to the Federal Census of 1920."

The body of the act makes it applicable to the counties of the population designated in the caption, "according to the Federal Census of 1920, or any subsequent Census;" and provides that in such counties the sheriff shall receive as compensation the sum of $2000, payable quarterly out of the County Treasury, upon warrant of the county judge as chairman; and in addition, shall have all the fees, commissions, and emoluments of the office of sheriff.

The amended answer of the defendants to the original bill charges that this statute of 1923 is unconstitutional, as in violation of section 8, article I, of the Constitution of the State: "for the reason that it imposes burdens, duties and obligations, and creates distinctions and classifications for and against citizens and taxpayers in certain counties in Tennessee not imposed upon citizens and taxpayers in other counties in said State, nor upon the community at large."

The answer otherwise charges that the statute is unconstitutional as in violation of section 17 of article II, and section 8 of article XI of the Constitution of the State, for the reason that the body of the act is broader than its caption. The decree of the chancellor de-

clared the statute unconstitutional and void as in violation of the Constitution "in the respects set forth by defendants in their answers and amended answers in the case, especially Article II, Section 17, and Article XI, Section 8, of the Constitution of Tennessee."

The caption describes the act as one limited to counties of a designated population according to the Federal Census of 1920, while the body of the act extends its application to counties which may come within the designated population classification by any subsequent Federal Census. The body of the act embraces counties, in the future application of the statute, which are excluded by the language of the caption. There can, therefore, be no doubt but that the body of the act, as it is written, is broader than the caption, and contains a provision which is not only not expressed in the caption but which is clearly excluded thereby.

It is ably argued by learned counsel for complainant that this formal defect in the statute should be avoided by construction, and that in order to effectuate the legislative intent, the words "or any subsequent Federal Census" should be read into the caption. An alternative insistence is that the words "or any subsequent Federal Census" be read out of the body of the act. By either process the body and caption would be made to conform to each other. For this contention complainant cites: *Southern Railway Co.* v. *Rowland,* 152 Tenn., 243; *Ashby* v. *State,* 124 Tenn., 684; *Riggins* v. *Tyler,* 134 Tenn., 577; *Wise & Co.* v. *Morgan,* 101 Tenn., 273; *Sutton* v. *State,* 96 Tenn., 696, and other cases.

It is contended for the defendants that the language of the statute, in both body and caption, is unambiguous and susceptible of only one interpretation, and that it

cannot be saved by construction. *Exum* v. *Griffis-New-bern Co.*, 144 Tenn., 239, 246-247; *Knoxville Power & Light Co.* v. *Thompson*, 152 Tenn., 223.

Complainant particularly urges as authority for his contention the opinion of this court in *Southern Railway Co.* v. *Rowland, supra,* wherein the restricting language of the caption of an act was, by construction, read into the body of the act. The effect in that case was to limit the application of the act to the subject particularly ex-pressed in the caption. Obviously the reverse pro-cedure, that is, reading into a caption of an act language which would extend its application, is not authorized by the opinion in that case. Such a procedure would nul-lify the constitutional requirement that the members of the Legislature should be informed by the caption of an act what it is they are asked to legislate. Manifestly the caption should not be extended by construction so as to include that which is plainly excluded.

With regard to the alternative contention of com-plainant, no case is to be found which will authorize a court in eliminating from a statute language which is plain and unambiguous, which fits into the context, and which creates no inconsistency or repugnancy within the body of the act. To eliminate from this act, by con-struction, the phrase evidencing its application to coun-ties which may hereafter come within the designated classification, would be to elide from the act a substan-tial provision, without which the Legislature may or may not have been willing to enact it.

And if this be done, learned counsel for defendants correctly say the act would be confined in its application to a single county, and would be in effect an act provid-

ing for a salary for the sheriff of Roane County, and, therefore, unconstitutional.

We think the same result would follow if the caption be treated as in conformity with the body of the act, describing it as an act to provide for the compensation of sheriffs in counties having a population of not more than 24,650 nor less than 24,624, according to the Federal Census of 1920, or any subsequent Federal Census. Obviously applicable to counties of considerable size, with a population of more than 24,000, a particular county must have a population within the narrow range of twenty-six persons, the difference between the minimum and maximum limits stated, in order to come within its application. The language used as effectively designated Roane County as if it had been referred to by name. *State* v. *Turnpike Co.*, 133 Tenn., 446; *State* v. *Kerby*, 136 Tenn., 386.

By general law, Acts of 1921, chapter 101, all of the counties of the State are classified according to population, for the purpose of fixing the compensation of county officers. Three classes are created, and all counties having a population of less than 100,000 are placed in a single class. The provisions of this general law for the compensation of county officers in all counties of the State having a population of less than 100,000 are identical. The power to so classify the counties of the State for this purpose has long been recognized by this court, and the particular statute now in force was sustained in *Hunter* v. *Conner*, 152 Tenn., 215. In that case the court said: "The salary is graduated according to the population, which is a fair index of official duty and responsibility. As between counties, the classification is not capricious or arbitrary, the act imposes no burden

upon any county, nor does it confer any privilege or benefit upon any county that may not be equally enjoyed by all counties naturally falling within the class." This language was used with reference to a classification which placed all counties having a population of less than 100,000 in the same class. It could not be applied to a classification which singles out a county from that general class because it happens to have a population different from that of other counties by no greater margin than twenty-six persons. *State* v. *Kerby,* 136 Tenn., 386.

In *Peters* v. *O'Brien,* 152 Tenn., 466, this court declared unconstitutional a statute applicable to Carter County, by a population reference, which provided that the county trustee should have a salary of $2000 per annum, in lieu of the fees of office. It developed that the fees were in excess of the compensation so fixed, so that the trustee was the loser. The court held that the act affected the trustee as an individual, and not the county in its governmental capacity, and that the classification attempted by the Legislature was unreasonable and arbitrary, rendering the act unconstitutional. The difference between the maximum and minimum limits of population there involved was twelve.

*Peters* v. *O'Brien,* referred to an intimation contained in the opinion of the court in *Hunter* v. *Conner,* that "there may be a reason to justify a provision for fixed salaries in certain of the smaller counties of the State because the fees provided under the general law do not amount to enough to secure the services of a competent official." But by this language the court could only have meant that the third class of counties created by the general act might be divided and a salary provided for

the officers in the smaller counties, by a reasonable, but not arbitrary, classification. Compare *Shanks* v. *Hawkins County*, this day decided, 160 Tenn., 148.

In *Howe* v. *Hawkins County*, 159 Tenn., 651, this court held that the compensation of a deputy sheriff in a particular county could not be increased by statute.

By a general statute the Legislature has divided the counties of the State into three classes, as a basis for fixing the compensation of county officers. *Peters* v. *O'Brien*, holds that a county officer may not be deprived of a portion of his compensation except by a statute which applies to similar officers in other counties of the same class. Under *Howe* v. *Hawkins County*, a county officer may not be awarded by special statute a greater compensation from the county treasury than other counties of the same class are required to pay similar officers.

Because the statute under consideration is a special statute, discriminatory against Roane County, and affects the sheriff as an individual and not the County in its governmental capacity, it violates the constitutional provisions against partial legislation, as contained in article I, section 8, and Article XI, section 8, of the Constitution of the State; and we prefer to place our concurrence with the chancellor, in holding the statute void, upon this ground, involving the substance of the statute, rather than upon the formal defect involved in the discrepancy between the caption and body.

It follows from this holding that the Legislature was equally without power to enact chapter 324 of the Private Acts of 1929, "validating" chapter 24 of the Pri-

vate Acts of 1923.; and the validating act is declared unconstitutional and void for the same vice which destroys the original act.

■ In the answer filed by the original complainant to the County's cross-bill, the right of the County to recover the salary received by complainant under the Act of 1923 is denied, even though the act be unconstitutional, as follows:

"Roane County has fully recognized the validity of said Act and has since its passage paid such salary to its Sheriffs and is still doing so, without any question. It has regularly paid to this defendant said salary since he gained this office by Court proceedings in June, 1925, and he avers that cross-complainant has estopped itself from setting up the alleged unconstitutionality of said Act which he pleads, and relies upon said estoppel."

Evidence was offered by complainant that the county judge of Roane County assisted in the preparation of the legislative bill and actively aided in securing its passage, which facts are also urged against the County in aid of the estoppel.

The preparation of a legislative bill, and efforts to secure its passage, were not within the official duties of the county judge, since it is not claimed that he was authorized so to do by the quarterly county court. Efforts of the county judge to secure the enactment of the statute must, therefore, be regarded as personal activities of that officer, which cannot form the basis of an estoppel against the County.

■ The obligation to pay county officers is not a contractual obligation of the County, but is attached to the office by law. "It is uniformly held that the public enters into no agreement with officers that they shall re-

ceive any specific compensation during the term." *Hunter* v. *Conner,* 152 Tenn., 248, 273-274. Accordingly no estoppel can be predicated on the theory that the County contracted with complainant to pay the salary fixed in the statute for services performed.

Nor is the County to be repelled on the theory that its payments to complainant were voluntary. Ordinarily a governmental agency is bound by the acts of its officers only when the officers are acting with authority of law; and the general rule is that compensation paid to officers in excess of, or without authority of law, may be recovered. *Norfolk County,* v. *Cook,* 211 Mass., 390, Ann. Cas., 1913B, 650, and note; Corpus Juris, vol. 46, pp. 1030-1031 ("Officers," section 285).

But it appearing that the validity of the salary statute was recognized by the financial agent of the County, the county judge, and by complainant, during the time the complainant served as sheriff, and that the payments of salary now sought to be recovered were paid and received in good faith, without collusion, and upon the faith of the statutory direction, we think the authorities support the equitable estoppel asserted in complainant's answer to the County's cross-bill. *Saylor* v. *Trotter,* 148 Tenn., 359, Petition to Rehear, p. 377; *Hunter* v. *State,* 158 Tenn., 63; *Beaver* v. *Hall,* 142 Tenn., 416; *Collier* v. *Montgomery County,* 103 Tenn., 705; *Speck* v. *State,* 66 Tenn., 46; Cooley, Constitutional Limitations (7 Ed.), pp. 232, 250-251.

The authorities cited do not question the general rule that an unconstitutional statute is not a law, does not of itself confer any rights, duties or obligations, and is "in legal contemplation, as inoperative as though it had never been passed." *Norton* v. *Shelby County,* 118 U.

S., 425, 6 Sup. Ct., 1121, 30 L. Ed., 176. But it is recognized that parties may so deal with each other upon the faith of such a statute that neither may invoke the aid of the courts to undo what they themselves have done.

This was the situation in *Collier* v. *Montgomery County, supra,* wherein it appears that a sheriff contracted with the county upon the faith of a statute affecting his rights as sheriff, and after the statute had been declared unconstitutional by this court in litigation between other parties, the sheriff was not permitted to urge the unconstitutionality of the statute in avoidance of his contractual undertaking.

In *Collier* v. *Montgomery County, supra,* this court quoted and followed the text of Cooley on Constitutional Limitations, page 216 (7 Ed. pp. 250-251):

"There are cases when a law, in its application to particular facts, must be sustained, because the party who makes objection, has, by prior acts precluded himself from being heard against it; and when a constitutional provision is designed for the protection solely of the property rights of the citizen, it is competent for him to waive the protection and to consent to such action as would be invalid if taken against his will."

In *Saylor* v. *Trotter, supra,* a sheriff who had sought election upon express promises to abide by the general statute substituting a salary for the fees of office, and who had received benefits under the statute after election, was held estopped to question its validity. Responding to a petition to rehear in which it was urged that the estoppel was not mutual, this court clearly intimated the application of the same equitable principle against the county. The court said:

"We see no lack of mutuality in the estoppel here. By way of illustration, suppose Knox county should undertake to repudiate and seek to recover the allowance made to the complainant for the employment of deputies upon the faith of which he has acted, on the ground that this part of the statute was unconstitutional. Would not the county be repelled?"

To hold the County to the estoppel urged by complainant is not to hold it bound by mere mistake of law of its financial agents, by which county funds were unlawfully disbursed. Ministerial officers are authorized to treat an act of the Legislature as *prima-facie* valid, in the absence of attendant circumstances affecting the right to rely upon the presumption of its validity. The well-recognized rule that the constitutionality of a statute may be attacked only at the suit of one who is affected by it, and therefore has a legal right to question its validity, springs from the holding that an unconstitutional act "is not void, but voidable only," until condemned by judicial pronouncement. *Speck* v. *State,* and *Collier* v. *Montgomery County, supra.* To the same effect is the conclusion reached by this court in *Beaver* v. *Hall,* 142 Tenn., 416; and in *Hunter* v. *State,* 158 Tenn., 63, 69, the court said:

"Even the highest courts of the land recognize the solemnity and *prima-facie* validity of legislative enactments, and hesitate always to pronounce them unconstitutional. Every presumption is indulged in favor of their validity."

The apparent equities of the cause before us are clearly in favor of the estoppel. Complainant established his right to the office only after an extensive litigation. He was paid the salary provided by the statute during

the one year he was permitted to serve, and no doubt adjusted his current expenses and mode of living to his income from the office. Men of large means and independent income do not ordinarily seek the office of sheriff, and the compensation is at best meager. To require the complainant to refund the year's salary, upon a demand first made after the expiration of his term of office, would undoubtedly work hardship, for which the complainant is in no equitable sense responsible. He was paid and received the salary by authority of the Legislature of the State, of which the county is a subdivision, and clearest principles of equity forbid the courts from assisting the county in repudiating such authority for the purpose of enforcing the refund of the salary paid.

Complainant's demand for the salary attached to the office, during the time he was prevented from serving, is not, however, governed by the same principles of equity. That is a legal demand only, and may be satisfied by awarding him only the compensation attached to the office by law, purged of the unconstitutional addition.

We do not concur with the chancellor in his holding that complainant is not entitled to recover the *ex-officio* compensation paid by the County to the person acting as sheriff during the time complainant was wrongfully deprived of the office. The statute, Shannon's Code, section 6404, provides that the county courts "shall, at their first quarterly term in each and every year, make such allowance as they in their discretion shall think sufficient to compensate their sheriffs for *ex-officio* service." While the quarterly county court of Roane County did not comply with this section of the Code, by reso-

lution at the first quarterly term, it did appropriate and pay to the incumbent the sum of $200 for such service during the time complainant was kept out of office. This action of the quarterly county court was itself a determination that the sum of $200 was a proper compensation to the sheriff for *ex-officio* service, and that amount was a part of the compensation attached to the office which complainant was entitled to receive.

There remains for consideration the assignment of error that the chancellor should have awarded complainant a new trial on the question of fact submitted to a jury.

It was agreed by counsel for all parties that the chancellor should submit to the jury the single question of fact: "What would be the fair and reasonable cost per prisoner per day for boarding or keeping prisoners in the jail of Roane County, Tennessee, from September 1, 1924, to August 4, 1925, the Sheriff or jailer during said time furnishing at his own expense three meals per day of good and wholesome food and proper bedding."

The motion for a new trial, and the assignment of error in this court, are based upon the argument of one of the solicitors for the County, preserved by bill of exceptions, as follows:

"Mr.———: Altho Mr. Roberts never performed any work and never fed any prisoners and now after this service has been performed (the work and fed the prisoners), he comes into this court and wants you to take from the taxpayers of this County the money that he did not work for.

"Mr. Carr: I object to that argument it is calculated to prejudice the jury and is not pertinent to the issues before it.

"The Court: Well, I think that is all right, go ahead.

"Mr. ——: On flimsy testimony they are trying to mulct the County in damage.

"Mr. Carr: I object to that statement of counsel before the jury.

"Court: I think that is all right except the word mulct eliminate that.

"Mr. ——: They came here thinking the County is legitimate prey—altho they know that Roberts did nothing for the County yet they are asking you gentlemen for a judgment against the County."

By his original bill the complainant sought to enforce against the County a claim, strictly legal in its nature, and not predicated upon equitable considerations. His right to recover the profit which would have accrued to him from the privilege of boarding county prisoners at 75 cents each per day was a question submitted alone to the chancellor, and with which the jury had no concern. The jury was selected and sworn to answer the single question, the amount it would have cost the complainant to furnish good and wholesome food and proper bedding to the prisoners. They replied that the cost would have been exactly, not more nor less, the allowance made by statute for this purpose. It is conceded that there is some evidence to sustain this verdict of the jury, and that being true, the verdict is conclusive. But we are called upon to say whether this verdict is entitled to be so treated when it was made in response to an argument which called attention of the members of the jury to the fact that the purpose of the inquiry submitted to them was to determine complainant's right to compensation for service he had not performed, and that the amount recovered would be taken from the

taxpayers of the County. It may be presumed that the jury numbered among its members some of the taxpayers. We cannot think that the verdict from a jury to which such an appeal had been made, apparently sanctioned by the chancellor when he overruled the objections made by the complainant, is entitled to the weight which must be accorded verdicts on appeal, or that it should be sustained.

We do not intend to criticize or impugn the motives of counsel who made this argument, but the function of a jury in a court of chancery is peculiarly limited, and in the case of the particular nature of that before us, we are convinced that the argument injected into the consideration of the jury an issue which was unfair to the complainant and prejudicial.

We think the complainant entitled to another trial on the issue of fact before a jury not subjected to such prejudicial appeal.

The decree of this court will provide: (1) That complainant's original bill be dismissed in so far as it seeks a recovery against the county judge of Roane County and the sureties on his official bond, and that the cross-bill of Roane County be dismissed; (2) that complainant have and recover of Roane County the sum of $479, allowed by the chancellor as turnkey fees, and $200 as *ex-officio* compensation, for which execution may issue from this court; (3) that because of the unconstitutionality of chapter 24 of the Private Acts of 1923, the complainant is not entitled to recover any salary thereunder; and (4) that the decree of the chancellor on the verdict of the jury be remanded, and a new trial awarded. The costs of the appeal are adjudged, one-fourth against complainant, and three-fourths against Roane

County, for which execution may issue. The cause will be remanded to the chancery court for a new trial and decree on the issue of fact to be determined by a jury, and the costs of that court will be adjudged by the chancellor in his final decree.