The Nashville, Chattanooga & St. Louis Railway *v.*
Carroll County, *et al.*

(*Jackson,* April Term, 1930.)

Opinion filed December 13, 1930.

J. T. Peeler, R. C. Armstrong, Fitzgerald Hall, Frank Slemons, Walton Whitwell and W. A. Miller, for complainant, appellant.

J. C. R. McCall, for defendants, appellees.

Mr. Justice Cook delivered the opinion of the Court.

The bill was filed to enjoin the collection of special county taxes levied by the quarterly court under chapter 902, Private Acts of 1929. A demurrer to the bill was sustained by the chancellor and complainant appealed.

It is insisted that the Act authorizing the levy is void and the action of the county court thereon illegal. It is said:

(1) "The Court erred in not holding that the attempted authorization by said chapter 902 of the 1929 Private Acts of an annual levy, in addition to all other taxes, of $9.50 per $100 worth of property, was an unconstitutional delegation of legislative power and discretion under section 29 of Article II of the Tennessee Constitution; so palpably arbitrary in amount as to violate the 'law of the land' clause (section 8, Article I) of the Tennessee Constitution and the 'due process' clause (Fourteenth Amendment) of the Federal Constitution; and was inconsistent with the general salary law, hence a violation of sections 8 of Articles I and XI of the Tennessee Constitution.

(2) "The Court erred in not holding that the item, 'Salaries . . . 0.08 per $100'' was illegal because it fails to disclose on its face whether the salaries to be paid out of the sum to be collected are such salaries as can legally be paid out of taxes, or whether it included

salaries of some officials which under chapter 101 of the Public Acts of 1921 must be paid exclusively out of the fees of office, the bill of complaint averring (R., 19-20) that the salaries involved were those provided for by said chapter 101 of the 1921 Public Acts, this being admitted by the demurrer.''

By the Act Carroll County, classified by reference to the population standard, was empowered to levy annually special taxes for ''road purposes, bridge purposes, levee purposes, repairing and keeping in repair the courthouse, county jail, county farmhouses, salaries, justices of the peace *per diem,* pauper allowances, circuit court bills of costs, jurors, poorhouse, pauper coffins, asylum, elections, board of prisoners, board of health, tax refund, county indebtedness and interest thereon.''

Section 2 of the Act provided that the special taxes levied should not exceed fifty cents on every hundred dollars worth of taxable property for any one of the special purposes.

Section 29, Article II of the Constitution, authorized the legislature to delegate power to the counties to impose taxes for county purposes. Affecting as it does the county in the exercise of governmental functions, the Act is not void as class legislation and so the only requirement as to uniformity is that the tax shall be equal and uniform throughout the county. *N., C. & St. L. Ry.* v. *Marshall County,* 161 Tenn., 236, 30 S. W. (2d) 268.

We are not inclined to disagree with counsel that an exercise of the taxing power by the State with intent to confiscate private property ought not be countenanced and that Chief Justice MARSHALL did not say in *McCullouch* v. *Maryland,* 4 Wheat., that the power could be exercised to that end. Such a conclusion would be con-

trary to the spirit of American institutions and violate principles of sound economics and public morals. The extent of the use of the taxing power, however, is always dependent upon the will of the taxpaying public. It is within their power to cause the imposition of taxes that would in effect result in confiscation. If communities moved by propaganda should reach out after unrealizable visions and as a result create unreasonable fixed public expenses and fixed indebtedness, the law could not relieve them of their self-imposed burden, however great it might be, notwithstanding the necessary tax might absorb all the income of taxable property.

The Constitution regulates only, it does not restrain the exercise of the taxing power. The only restraint is that inherent in our system of representative government, the sound judgment of the legislators and the repressing or sustaining influence of public opinion. Among all the institutions of the State there is no agency vested with authority to restrain the legislative discretion in the exercise of the power of levying taxes.

The legislative department is supreme in its use of that power and by keeping within constitutional limits may exercise its discretion. So the fact that the legislature authorized the county court to levy not to exceed fifty cents on the hundred dollars worth of taxable property for any one of the special purposes indicated by the Act would not render the Act void. Probably it was not supposed that the county court would levy taxes for all of these purposes and would only levy the maximum to meet an emergency. The levy, as made, was limited to the following special purposes and rates, to-wit:

Special bridge, 0.06; special levee, 0.06; salaries, 0.08; courthouse expenses, 0.02.5; county indebtedness

and interest, 0.07. Total, 0.29.5. This levy is apparently reasonable and in no sense confiscatory. As said in *Nashville, Chattanooga & St. Louis Railway* v. *Benton County,* judicial restraint could be imposed only to prevent the arbitrary and unreasonable exercise by the county of the power delegated by the legislature under Sec. 29, Article II of the Constitution.

It is stated in the bill that complainant endeavored to ascertain what salaries are to be paid from the 0.08 levy and was unable to do so, and that the minutes of the county court show that this levy was made for salaries generally without limitation. It is alleged that certain salaries are made charges against the county by Private Acts as follows:

Deputy county court clerk $500 annually, chapter 745, Private Acts of 1927.

The salary of circuit court clerk, $1500 a year, by chapter 450, Private Acts of 1919.

Clerk and master, $1800 a year in addition to fees, by chapter 523, Private Acts of 1925.

Also to the sheriff a salary of $1800 a year.

It is charged that the Acts fixing these salaries are in conflict with chapter 101, Acts of 1921, and that they were designed to suspend the general law and discriminate in favor of the officers of this county. And it is insisted that the special levy for salaries could not be made to cover the salaries thus illegally authorized. Statutes so discriminating between counties in the allowance of official salaries are void. *Peters* v. *O'Brien,* 152 Tenn., 466; *Hunter* v. *Conner,* 152 Tenn., 258.

The bill attacks the validity of the Act authorizing the county to levy the special taxes. It was not filed to prevent the diversion of county funds to illegitimate

uses. Special levy for salaries was expressly authorized by chapter 902, Private Acts of 1929. The salaries of county judge, county health officer, farm agent and road officials, and maybe others, would be legitimate charges against the county for which the special levy for salaries could be made.

In the absence of a showing in the bill to the contrary, it must be inferred that the tax was levied to meet salaries that the county could legitimately pay. If the fund derived from this special levy should be put to unauthorized uses, then as said in *Kennedy* v. *Montgomery County*, 98 Tenn. 179, taxpayers had a right not only to complain, but a remedy to redress the grievance if they apply to the courts in the proper way and at the proper time. See also *Railroad* v. *Hamblen County*, 115 Tenn., 528.

The bill was not filed to enjoin the illegal use of funds derived from the special levy for salaries, and since the levy was authorized and it does not appear that it was made for illegitimate purposes, the chancellor properly sustained the demurrer as to this as well as to the other items.

Remanded for the trial court to fix the fees of counsel for the county, as required by section 660 of Shannon's Code.