STATE, FOR USE OF SULLIVAN COUNTY, *v.* O'DELL *et al.*

(*Knoxville,* September Term, 1934.)

Opinion filed July 15, 1935.

JOHN F. BLEVINS, of Blountville, and H. H. HAYNES, SR., of Bristol, for complainants, appellees.

BURROW & BURROW, of Bristol, and WEBB, BAKER & GOODMAN, of Knoxville, for defendant, appellant.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

By the bill Sullivan county seeks to recover from J. E. O'Dell, county court clerk, and National Surety Com-

pany and Home Indemnity Company, sureties on his official bonds, the sum of $6,300, together with interest and penalties, for excess fees which he failed to account for. The chancellor decreed in favor of the county, and his decree was affirmed by the Court of Appeals. O'Dell served as county court clerk for three terms, 1922 to 1934. Each year the county court fixed his compensation for making out the tax book pursuant to section 1482 of the Code, which is as follows:

"The clerk of the county court shall make out from the assessment books in his possession a tax book, and deliver to the trustee said tax book on or before the first Monday of October each and every year, respectively, and he shall receive such compensation as the county court shall allow; provided, that the trustee shall have, at the date of his induction into office, entered into the several bonds in the amount of taxes as required by law. Said tax books shall be made out by districts, and shall be ruled in suitable and appropriate columns, and shall show names of owners in alphabetical order, the number of lots and blocks, number of acres, description of the property as contained in the assessment roll, the value of each lot, tract, or parcel of land, the valuation of personal property under the appropriate head or items called for by this chapter, and the total valuation of real and personal property against each taxpayer; also all poll taxes due according to said assessment books. On the total valuation of the real property of each taxpayer, the state, county, special, road, school, and municipal taxes shall be extended in appropriate columns separately according to and at the rate levied by the proper authority for each of said purposes, and a column added

showing the total of all taxes levied for all purposes and to be collected from each taxpayer.''

During his first term O'Dell accounted for the compensation so allowed, but beginning with 1926, up to and including 1931, he did not account for said compensation, aggregating $6,300, upon the advice of a friend that he was entitled to this compensation for *ex officio* services in addition to his salary of $5,000, provided for clerks in counties of the third class. O'Dell advised neither the county court nor its presiding officer that he was withholding such fees. The county judge testified that he had no knowledge of that fact until in 1931, when an audit was had. Immediately upon its disclosure the bill herein was filled.

█. The primary contention advanced on behalf of O'Dell and his sureties is that he is entitled to compensation for making out the tax book as *ex officio* services in addition to the regular salary provided by the General Salary Act, chapter 101, Acts of 1921. The first section of that act, Code, section 10725, is as follows:

''The clerk and masters of the chancery courts, the clerks of the county and probate, criminal, circuit and special courts, county trustee, registers of deeds, and sheriffs shall be deprived of all their fees, commissions, emoluments and perquisites that shall accrue, or be received by virtue of their respective offices; except payment for special services as trustee or receiver; and they shall be compensated for their services by salaries in the manner hereinafter provided, which salaries shall be in lieu of all other compensation.''

Section 6, Code, section 10730, provides:

''All the excess fees, commissions, perquisites, and

emoluments, no matter whether such sums arise from fees, commissions, perquisites, or emoluments by order or by direction of court, that are or may be directly or indirectly collected by virtue of their offices by the clerks of the circuit, criminal and special courts, and by the clerk and master of the chancery courts, clerks of the county and probate courts, county trustees, registers of deeds, and sheriff, except compensation for special services as trustee or receiver, shall be paid to the county trustee as a part of the county revenue, and the same when accrued are declared to be the property of the respective counties wherein the same are collectible, except as provided."

The first section of the act is very broad and was intended to include all compensation received by the clerk, with the exception of fees received for acting as trustee or receiver. From these express exceptions it is clearly inferable that the Legislature intended to exclude all other fees or compensation. The term "salary" imports the idea of compensation for personal service. *Peay* v. *Nolan,* 157 Tenn., 222, 7 S. W. (2d), 815, 60 A. L. R., 408.

It is as much a part of the regular duty of the office of clerk to make out the tax book as it is to issue a marriage license or record a decree, and the Legislature has prescribed specified fees for every service performed, except as to making out the tax book. It has provided compensation for that service, but has delegated to the court the power to fix the amount thereof, which would depend upon the time and labor expended, and would necessarily vary in the different counties. In *Hagan* v. *Black,* 159 Tenn., 290, 295, 17 S. W. (2d), 908, 909, an "*ex officio* service" is defined: "Every service a circuit

court clerk is required by law to perform, for which no fee or charge is specified.'' The word ''specify,'' in one sense, means to ''mention or name.'' The New Universities Dictionary. In the involved statute compensation is mentioned, that is provided, although the amount thereof is to be determined by the court. The situation, in effect, is the same as though the Legislature had named a specified sum.

That the Legislature did not intend that this fee should be considered as compensation for *ex officio* services, or services independent of the regular duties of the office, is borne out by the fact that in section 10704 of the Code, which states the amount of fees to be collected by county court clerks, in item 63 it is provided: ''For *ex officio* services, the court may make him an allowance not exceeding . . . $50.00.'' This refers to extraordinary or unusual services for which no compensation is provided.

It further appears that the clerk was allowed an additional deputy on account of having to make out the tax book, and all the work was performed by this deputy, so that O'Dell was not out any time, labor, or expense in the performance of this duty.

Where the income is less than the salary, or where it varies from time to time, sometimes less and at others more than the salary and expenses, it is very essential that the court fix the compensation for making out the tax books. The contention of O'Dell appears to us to be without merit, and contravenes both the letter and the spirit of the Salary Act (Code 1932, section 10725 et seq.).

It is next insisted that the county, having appropriated and paid this compensation, should be held

estopped to recover it. It was the duty of the court to fix this compensation, and that of the clerk to collect and pay it into the county treasury where no part of it was needed to pay his salary or the expenses of the office. It would be unnecessary for the court to fix the compensation where it is made to appear that other income is sufficient to pay the clerk's salary and expenses. But it is not shown that the court possessed such knowledge, and it had a right to assume that O'Dell was complying with the law and paying any excess into the treasury.

Section 10735 of the Code contains this provision: "But the payment or allowance of any salary or expense statement shall in no way prejudice or preclude the disallowance of any one or more items found to be improperly included in any of said statements, when the same shall have been audited, nor shall it relieve such officer from refunding to the county all such items so improperly included."

In our view, this is simply a case where an officer lawfully collected compensation and unlawfully failed to account for it. The question of estoppel is not involved. But if it were, under our authorities, in the facts of this cause, it could not be given effect. *State for Use of Obion County* v. *Bond*, 157 Tenn., 326, 8 S. W. (2d), 367; *Roberts* v. *Roane County*, 160 Tenn., 109, 23 S. W. (2d), 239.

In the third place, it is contended, rather faintly, that under our construction of the Salary Act it is unconstitutional for the reason that the body of the act is broader than its caption. We have carefully analyzed the caption, and reaffirm what we said with respect there-

to in *Hunter* v. *Conner*, 152 Tenn., 258, 270, 277 S. W., 71, 74, to-wit:

"We have no difficulty in concluding that the caption of the act expresses one general subject, and expresses it sufficiently to meet the requirement of the Constitution, and that the provisions of the act are germane to the title, and not inconsistent with each other."

This contention is predicated upon the theory that the word "fees" in the caption is not broad enough to include the "compensation" provided for making out the tax books. Webster defines the word "fee" as a "reward or compensation for services rendered, or to be rendered." It was in that sense that it was used in the Salary Act. In *Ellis County* v. *Thompson*, 95 Tex., 22, 64 S. W., 927, 66 S. W., 48, it was held that under a statute prescribing the maximum amount of fees of all kinds that may be retained by county officers, the words "fees of all kinds" embrace every kind of compensation allowed by law to any of the officers included in the provision.

█ The Home Indemnity Company insists that this suit is premature. It became surety in 1930, and a decree was entered against it solely for the $1,350 collected by O'Dell that year, and which he failed to account for. O'Dell's third term began in 1930 and ended in 1934. This contention of prematurity is predicated upon the false premise that O'Dell had his entire term within which to account. The Salary Act (section 10729) provides that he shall render an account and pay over excess fees on the first days of April and September of each year. Failing to comply, he becomes delinquent, for which an action will lie.

█ Error is assigned to the action of the Court of

Appeals in holding the Home Indemnity Company liable on O'Dell's "revenue bond." To say the least of it, this was harmless error. This bond, as well as the official bond, was executed solely by this company, and a decree was entered against it upon both bonds. The Indemnity Company does not question its liability upon the official bond. If we should hold that it was not liable upon the revenue bond, it would not alter its situation or lessen its liability.

■ Some of the defendants assign for error the action of the chancellor in submitting certain issues as to estoppel to the jury, for the reason that such issues were immaterial. Opposing counsel assent to this, and it seems to be conceded that the question of estoppel under the undisputed facts of this cause is purely a question of law. Technically this assignment does not raise any question for our consideration because it complains of the action of the chancellor and makes no reference to the Court of Appeals.

In the view we have taken of this cause, viz., that making out the tax book is not technically an *ex officio* service but one of the ordinary duties of the office, it becomes unnecessary to determine whether the Salary Act embraces fees allowed for *ex officio* services, as provided in item 63 of section 10704 of the Code.

Both writs denied.