Tipton County *et al. v.* Scott.

(*Jackson,* April Term, 1941.)

Opinion filed May 24, 1941.

Wm. C. Tipton, of Covington, and L. E. Gwinn, of Memphis, for appellant.

Wm. A. Shoaf, of Covington, for appellees.

Mr. Justice DeHaven delivered the opinion of the Court.

The bill herein was filed under the Declaratory Judgments Law of Tennessee, Code Sections 8835-8847, to test the validity of Chapter 416, Private Acts 1939, approved March 10, 1939, and applicable, on a population basis, to Tipton County alone. Omitting the caption, the Act is as follows:

"Whereas, the maintaining by any County of a separate penal farm, to which prisoners are committed after conviction operates to deprive the Sheriff of such County of a substantial portion of the compensation of his office by taking away from him the revenue which would accrue to him from the board of such prisoners, and results in placing the Sheriff of such County, with respect to the compensation of his office, at a serious disadvantage with and on a lower basis than Sheriffs in Counties of a similar class not maintaining such separate penal farm; now, therefore,

"Section 1. Be it enacted by the General Assembly of the State of Tennessee, That hereafter Sheriffs in all Counties of this State having a population of not less than 27,400 nor more than 27,600 inhabitants according to the Federal Census of 1930 or any subsequent Federal Census and maintaining a separate penal farm to which prisoners are committed after conviction, shall receive a salary of $3,600.00 per annum.

"Section 2. Be it further enacted, That the salary herein provided for shall be payable in four equal quarterly installments of $900.00 each on the last day of March, June, September and December of each year out

of the general County funds of such Counties upon warrants drawn upon the County Trustee by the County Judge and County Court Clerk thereof.

"Section 3. Be it further enacted, That Sheriffs in Counties coming within the provisions of this Act shall also be entitled to receive and retain all fees earned by them in the exercise of the duties of their office, including turnkeys and amounts due for board of prisoners held in jail awaiting trial or awaiting transfer to another penal institution, to the extent that the same, together with said salary, shall not exceed the maximum compensation allowable by general law to Sheriffs in Counties of a similar class.

"Section 4. Be it further enacted, That this Act take effect upon the first day of the month following the establishment and beginning of operation of the penal farm above mentioned."

The chancellor decreed the Act void as violative of Section 8, Article 1, and Section 8, Article XI, of the Constitution of the State of Tennessee. From this decree the defendant, Jim T. Scott, has appealed to this court and assigned errors.

Defendant, Scott, was the duly elected, qualified and acting sheriff of Tipton County, having been inducted into that office on September 1, 1938. His claim is that under the Act here in question he is entitled to the $3,600 per annum compensation therein provided, in addition to the fees of the office to an amount, which added to the $3,600, will not exceed $5,000.

Under the provisions of Sections 10725-10748 of the Code of Tennessee, county officials of this State, including sheriffs of all the counties thereof, were placed on salaries and deprived of fees accruing to them as holder of their respective offices. Tipton County was within the

third class of counties, as established by the above mentioned sections of the Code, for the payment of official salaries, and the maximum compensation that could be paid sheriffs under the third classification was $5,000 annually, all fees in excess of said amount being declared to be the property of the respective counties.

By Chapter 685, Private Acts 1937, Tipton County was authorized to issue its bonds in an amount not to exceed $50,000 for the purpose of acquiring land for a combined penal and county farm and erect such buildings thereon as might be necessary to provide for a jail or work house, a home for the poor, aged, and infirm, and for the insane. This Act provided in section 5 thereof that the county court of Tipton County "shall constitute and elect a commission which shall be known as 'Tipton County Institutions Commission' and the same shall be composed of five members." Under section 8 of the Act the commission was authorized to employ a Superintendent of Institutions for the county, at the salary of $125 per month, payable out of the general institutions account of the county, to serve for a period of four years, but removable for incompetency, neglect of duties or misconduct. It was further provided that the Superintendent, under the direction of the Commission, "shall have supervision, management and control of the penal and county farms, its buildings and all persons committed to the several institutions located thereon."

Acting under the authority of Chapter 685, Private Acts 1937, Tipton County established a combined penal and county farm and the same has been in operation since February, 1940.

Defendant avers in his answer that prior to 1937, Tipton County, like practically all other counties of the State of like size and population and situation, did not

have or maintain a separate penal farm, to which prisoners were committed after conviction, but maintained a combined jail and workhouse and that by far the larger part of the compensation accruing to the sheriff was derived from the board, etc., of persons committed to his custody after conviction. That in 1937, the county court of Tipton County conceived that the expenditures of the county for the board of prisoners after conviction and the support and maintenance of paupers and insane persons was excessive and that large savings could be effected by the establishment of a penal farm, and as a result the Legislature passed Chapter 685, Private Acts 1937. It was further averred that the county court realizing that the establishment of the penal farm would be to greatly reduce defendant's compensation as sheriff and put him upon a much lower footing as to compensation than sheriffs in other like counties, passed a resolution appointing a committee to confer with defendant in regard to a salary to repay him for fees lost by the transfer of workhouse hands from the jail to the penal farm, and to take steps to have an enabling act passed by the Legislature then in session, fixing the amount of such salary at $3,600 per annum. He further avers that prior to the establishment of the penal farms, the compensation of his office, including the board of persons after conviction, amounted to between $4,000 and $5,000 per annum; that since the penal farm has been put in operation, the result of the same, so far as his compensation is concerned, has been to reduce the same to a figure far below that received by him prior thereto and that being now received by sheriffs in other similar counties not maintaining a separate penal farm.

Defendant insists that Chapter 416, Private Acts 1939, the validity of which is here challenged, cannot be re-

garded as an act for the special benefit of the sheriff so long as it does not bring his total compensation above the maximum provided by law for sheriffs in counties of the same class; that unless provision be made to compensate the sheriff for loss of revenue resulting from the establishment of the penal farm a decrease in the efficiency of the public service would result.

Tipton County, under the general law of the State, Code, Sections 12004-12037, could have established a county workhouse separate and apart from the county jail. The county court of any county may provide such lands and buildings as may be necessary for a workhouse for such county, Code, Section 12004, and persons liable to be imprisoned in the county jail for safe-keeping or punishment may, in the discretion of the court or justice, be confined in the workhouse, Code, Section 12006. The election of a workhouse commission is provided for, Code, Section 12012, and the commission shall appoint a superintendent of the workhouse, Code, Section 12020, who shall have the care of the prisoners, Code, Section 12022. When a separate workhouse is not provided, the county jail may be declared a workhouse, Code, Section 12005, in which case the sheriff is superintendent. Code, Section 12024. The board of State prisoners shall be paid to the superintendent, who shall pay the same to the county trustee, Code, Section 12025. Under Code, Section 12037, any county not desiring to work its workhouse prisoners may, through its judge or chairman, by direction of the county court, contract with any other county for the custody and employment of the prisoners.

Had Tipton County established a separate workhouse, under the above provisions of the Code, the fees of the sheriff would have been affected to the same extent as under the establishment of the penal farm under

the Act here in question. In fact, the penal farm, so far as the confinement of prisoners is concerned, is nothing more. than a county workhouse. When defendant took the office of sheriff, he did so with full notice that the county could and might establish a separate workhouse, and that if it did so his fees would thereby be reduced. Defendant has no valid basis for complaint that his compensation has been reduced as the result of the establishment of the penal farm. In *Hunter* v. *Conner,* 152 Tenn., 258, 277 S. W. 71, 75, it was said, ''It is uniformly held that the public enters into no agreement with officers that they shall receive any specific compensation during the term.'' ''The obligation to pay county officers is not a contractual obligation of the county, but is attached to the office by law.'' *Roberts* v. *Roane County,* 160 Tenn., 109, 23 S. W. (2d), 239, 243.

Under the general law, Code, Section 10727, defendant, as sheriff of Tipton County, was entitled to a maximum salary of $5,000 to be paid out of the fees of his office. The Legislature undertook by the enactment of Chapter 416, Private Acts 1939, to vary the general law by providing that the sheriff of Tipton County should be paid a salary of $3,600 per annum out of the general county funds of the county, upon warrants drawn upon the county trustee by the county judge and county court clerk. Thus the Act singled out the sheriff of Tipton County from among all other sheriffs of counties of the third class and conferred upon him a benefit inconsistent with the general law. While the Act fixes a salary of $3,600 per annum for him, in no way made dependent on the fees of his office amounting to that figure, the sheriffs of all other counties of the class, under the general law, are wholly dependent for their compensation on the fees of their office. The sheriff of Tipton County, by the Act,

is given in effect a guaranteed minimum compensation of $3,600 per annum, while the sheriffs of other like counties have no such guarantee under the general law.

The Act in question primarily affects the sheriff of Tipton County as an individual rather than the county in its governmental capacity. A private act fixing compensation of the Sheriff of Hawkins County for ex-officio services was held to primarily affect the officer as an individual and not the county in its governmental capacity, and to be an invalid discrimination and unconstitutional. *Shanks* v. *Hawkins County*, 160 Tenn., 148, 22 S. W. (2d), 355.

In *Nashville, C. & St. L. Ry.* v. *Carroll County,* 161 Tenn., 581, 33 S. W. (2d), 69, it was held that statutes designed to suspend the general law and to discriminate between counties in the allowance of official salaries are void. To like effect see *Peters* v. *O'Brien,* 152 Tenn., 466, 278 S. W., 660; *Hunter* v. *Conner*, 152 Tenn., 258, 277 S. W., 71. In *Roberts* v. *Roane County,* 160 Tenn., 109, 239 S. W. (2d), 239, 242, the salary claimed by Roberts was that fixed for the sheriff of a county of a designated population. The court said, ''Because the statute under consideration is a special statute, discriminatory against Roane county, and affects the sheriff as an individual, and not the county in its governmental capacity, it violates the constitutional provisions against partial legislation, as contained in article 1, section 8, and article 11, section 8, of the Constitution of the State.''

For the reasons set forth above, we hold Chapter 416, Private Acts 1939, to be unconstitutional and void, because violative of section 8, Article 1, and section 8, Article XI, of the Constitution of the State of Tennessee. The decree of the chancellor is affirmed. The costs of the appeal will be paid by appellant.