Hobbs *v.* Lawrence County et al.

(*Nashville,* December Term, 1951.)

Opinion filed March 7, 1952.

Henry & Henry, of Pulaski, for complainant.

Thomas H. Goodman, Assistant Attorney General, and Joseph Allen Freemon, County Attorney for Lawrence County, of Lawrenceburg, for defendants.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The complainant, J. Frank Hobbs, filed an original bill in the Chancery Court seeking a declaratory judgment as to the constitutionality of Chapter 263 of the Public Acts of 1951, the same being amendatory of the general Salary Act, Code, Sections 10726 and 10727 by making six new classifications and providing minimum salaries to certain named county officials, including Clerks and Masters of the Chancery Court.

The first Section of the Act provides:

"That Chapter 118 of the Public Acts of 1935 as amended by Chapters 31 and 169 of the Public Acts of 1945, be and the same is hereby amended by inserting at the end of Section 1 thereof a new section numbered Section 1(a) as follows:

"Sec. 1(a). Provided, however, in order to secure the services of competent officials in all counties that in no case shall the sheriffs, trustees, registers of deeds and the clerks of Circuit, Criminal and County and Probate Courts and the Clerks and Masters in the following counties receive an annual salary less than the following amounts, to-wit:"

The sums that are authorized as a minimum salary are classified on a population basis, there being six of such classifications. It is further provided that "In case the fees collected by any of these officials in these counties where minimum salaries are required amount to more than the required minimum salary, then the salary of such official and the fees of the office shall be controlled by the limits fixed by this Section 10727(A) (B) (C) (D)." But in case the fees are less than the minimum salary the same shall be supplemented to that extent

and the amount shall be paid out of the general funds of the county.

The following clause appears in Section 1 of the Act: "The provisions of this Act shall not be mandatory where the County Court elects not to come under its provisions." The County Court of Lawrence County adopted a resolution to the effect that the county "elects not to come under the provisions of said Act."

Immediately following the adoption of the foregoing resolution the complainant filed his bill for a declaratory judgment, charging that the said Section providing that a County Court was privileged to exempt itself from the provisions of the Act was unconstitutional in that (1) it was an unlawful delegation of authority; and (2) "It violates Article 11, Section 8, of the constitution in that it permits a suspension, abrogation or nullification of the general law for the benefit of such counties as may choose to adopt a resolution of the type set out above."

The State Attorney General demurred to the bill upon the ground that the Act shows on its face that it is constitutional. Lawrence County demurred on the same ground and upon the further grounds: (1) that it is not in violation of either Article 1, Section 8, or Article 11, Section 8 of the Constitution; (2) that "it is not unreasonable, arbitrary, partial or vicious class legislation."

The Chancellor overruled the demurrers, eliding the section which permits any county not to come under the provision of the Act, the same being held invalid; he also held that the Act, with the section elided was a valid enactment. An appeal was prayed and granted to this court.

The assignments of error raise two precise questions:

(1) Is the last sentence of Section 1(a) of Chapter 263, Public Acts of 1951, invalid as an unconstitutional delegation of legislative power?

(2) If so, may this clause be elided leaving the remainder of the Act in full force and effect as a valid enactment?

Contention is made by the demurrants that the statute is a local option statute and that any county within any one of the six classifications is privileged to exempt itself from its provisions by formal resolution by the Quarterly County Court. Counsel for the complainant expresses a contrary view, and insists (1) that it is a general law, complete in all respects, and became effective throughout the State immediately upon its passage; (2) it is not a "local option" statute; (3) that the assailed "exempting" clause is an unconstitutional delegation of authority to the County Court to suspend a general law.

The appellants rely upon a long line of cases in which local option statutes have been upheld, and under which the Counties and Municipalities of the State were granted the right to determine by referendum whether or not intoxicating liquors should be sold within a particular locality. It is definitely settled by all our cases that these local option statutes are not invalid as an unlawful delegation of legislative authority. These statutes provide remedies for the enforcement of police powers in local communities relating to the sale of beer and whisky. There are a few local option statutes relating to no fence laws, stock running at large, which involve regulations under the police power of the State. The more recent case, construing a local option statute relating to the manufacture of whisky in Moore County, is *Clark* v. *State ex rel. Bobo,* 172 Tenn. 429, 113 S. W. (2d) 374, 782. In this case reference is made to numerous decisions by

this court upholding similar statutes as not within the constitutional inhibition against unlawful delegation of power.

We are thus definitely committed to the general principle that the Legislature may enact a statute to become effective upon a named contingency or the happening of a particular event. The delegation of this limited authority is not now the subject of debate. The principle upon which the delegated power may be exercised appears in *Carothers* v. *Giles County,* 162 Tenn. 492, 39 S. W. (2d) 584, 585, the court quoting from Locke's Appeal, 72 Pa. 491, 13 Am. Rep. 716: "The Legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact, or state of things, upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government."

We do not think the decisions upholding the local option statutes, to which we have referred, control the case now under consideration. The statute herein assailed is not made effective upon any contingency or an election to be held. That it is a State wide law and general as it applies to certain officials within given classifications is not controverted. The question is whether or not a Quarterly County Court has the lawful authority, pursuant to the statute, to vote a general law out of operation in Lawrence County, once having become effective.

The question is one of first impression in this State unless it was decided in *Wright* v. *Cunningham,* 115 Tenn. 445, 91 S. W. 293, wherein a local option statute was construed. There was an attempt to distinguish it in *Clark* v. *State ex rel. Bobo,* supra. But regardless of the reasons advanced in distinguishing this case, it seems

clear that in *Clark* v. *State ex rel. Bobo* the Act was to become effective in a given locality upon a contingency, i. e. a majority vote of the people, where as in *Wright* v. *Cunningham* the amendment to the general law delegated to the voters of Rhea County the right to nullify the general law; in other words to vote it out of operation in that county.

We do not wish to be understood as holding that where a statute provides for a referendum on the question of the regulation and prohibition of the liquor traffic, that the qualified voters may not "vote whisky out" having once voted in favor of it. Such statutes are generally held to be valid.

 Where it definitely appears on the face of a general law that it is intended to apply to all citizens alike, and purports to represent the public policy of the State such as fixing the salaries of county officials, or a general and uniform system of education and the like, such law is not subject to emasculation by local authorities. In 1921, c. 101, the Legislature enacted the "anti fee" statute and provided for salaries of all county officials which were uniform and general upon a population classification. It has been amended from time to time. But in every instance the salaries were uniform, and were the same in each classification. It has been definitely decided that the compensation of county officials is not a "private or local affair" within the meaning and intent of Article 11, Section 9 of the Constitution. The Legislature itself is not privileged to suspend the general law and discriminate between counties in fixing official salaries. *Nashville, C. & St. L. Ry.* v. *Carroll County*, 161 Tenn. 581, 33 S. W. (2d) 69; *Peters* v. *O'Brien*, 152 Tenn. 466, 278 S. W. 660; *Hunter* v. *Conner*, 152 Tenn. 258, 277 S. W. 71; *Roberts* v. *Roane County*, 160

Tenn. 109, 23 S. W. (2d) 239; *State ex rel. Shelby County* v. *Stewart,* 147 Tenn. 375, 247 S. W. 984; *Henderson County* v. *Wallace,* 173 Tenn. 184, 116 S. W. (2d) 1003; and *Tipton County* v. *Scott,* 177 Tenn. 507, 151 S. W. (2d) 167. The foregoing cases expressly hold that there cannot be a fixed salary for an official in one county and a different amount to the same official in another county, both counties being within the same classification.

The appellants further rely upon Article 11, Section 9 of the Constitution which provides: ''The Legislature shall have the right to vest such powers in the courts of justice, with regard to private and local affairs, as may be expedient.'' This section follows Section 8 which prohibits the Legislature from suspending a general law for the benefit of individuals, etc. We cannot see that it has any application to the case at bar. It is our well considered judgment that the Quarterly Court of Lawrence County was without authority to adopt the resolution, and the same was ineffective as suspending or abrogating the general law.

We think the Chancellor was correct in holding that the ''exempting'' clause was an unlawful delegation of legislative authority; in eliding the clause and sustaining the Act without this provision.

The doctrine of elision addresses itself to the question of legislative intent. The rule is set forth in *State ex rel. Lyle* v. *Willett,* 117 Tenn. 334, 339, 97 S. W. 299; and *Rinehart* v. *State,* 121 Tenn. 420, 117 S. W. 508. The general rule is that ''where a clause is so interwoven with other portions of an act as that we cannot suppose that the Legislature would have passed the act with that clause omitted, then if such clause is declared void, it renders the whole act null.'' This rule has been followed in all our cases. While we do not dissent from it in the

instant case, it has no application here. The clause herein assailed does not affect the substance of the Act, nor its expressed purpose, i. e. "to secure the services of competent officials in all counties," etc. The case of *Malone* v. *Williams*, 118 Tenn. 390, 103 S. W. 798, has no application. In that case at least 11 substantial provisions of the Act were declared unconstitutional, also, as pointed out by counsel, there was a fatal variance between the caption and the body of the Act. The Act assailed is complete in all respects and is capable of being executed without the clause assailed and clearly expresses the intention of the Legislature.

The assignments of error are overruled and the decree of the Chancellor is affirmed.